(No. 36759.—

The People of the State of Illinois, Defendant in Error, *vs.* James R. Garreau, Plaintiff in Error.

*Opinion filed March 25, 1963.*

JEROME GILSON, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and EDWARD J. HLADIS and MATTHEW J. MORAN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

A jury in the criminal court of Cook County found defendant, James R. Garreau, plaintiff in error, guilty of rape and sentenced him to a term of 199 years. From a judgment rendered upon said finding the defendant now urges a reversal upon the following errors which he claims were committed in the trial court: (1) prejudicial closing argument on the part of the State, (2) admission of certain alleged hearsay testimony, and (3) failure to prove defendant guilty beyond a reasonable doubt.

The complaining witness, Mrs. Oma West, was 62 years of age, 5 feet in height and weighed 89 pounds. She testified that on the night of November 11, 1960, she was in bed in her one-room apartment when she heard a loud knock on the door. James Garreau, 29 years of age, known as Bobby Garreau, asked to be admitted to her room upon the pretext that there was trouble with the steam heating in the home and that he wished to check the register in her room. Shortly thereafter he informed her that he had come to kill her, put his hand on her throat and applied pressure. She stated that she was so scared she could not move. He proceeded to remove her clothing, then his clothing and then committed two acts of rape and various other crimes against her person which need not here be repeated. It is sufficient to say that from a narration of her testimony horrible offenses were committed against her person over a period

of several hours. When defendant had finished, he ordered Mrs. West not to leave her room and stated that he would return. She informed him that she was too ashamed to talk about the experience and remained in her room for a period of time. At approximately 4:45 A.M. she left the premises and went to a nearby restaurant where her daughter was employed. Her daughter noticed that her mother was all hunched up, shaking and walking with difficulty and inquired as to what was the matter. After exacting a promise from her daughter not to relate the information to others she informed her that she had been raped in her room by Bobby Garreau. Thereafter she removed her belongings to a new apartment, rested for a while, went to visit a neighbor, had a conversation with her, went to the police and later was examined by a doctor.

Her daughter, Doris Sherbondy, testified that her mother stated to her, "I have been raped in my bedroom by Bobby Garreau". William Ryan, a Chicago police department detective, stated that he talked to Mrs. West at 5:30 P.M. on November 12 at the district police station and thereafter he and his partner went to the Garreau residence. In the kitchen of the home they found James R. Garreau and Mr. and Mrs. Vanderhyde, his brother-in-law and sister. The detective asked defendant if he was Bobby Garreau, who replied, "No, I'm Dick." Mrs. Vanderhyde asked Ryan what the charges were and when Ryan told her that Bobby was wanted for questioning in connection with the rape of Oma West defendant said nothing. Vanderhyde then identified him to the police. Detective Ryan then informed defendant he was under arrest and then defendant swung at Ryan's partner. Both detectives then subdued him and took him to the police station. The doctor who had examined her testified he found no marks or bruises on Mrs. West's body but that the conditions found in her privates could have been caused by a vaginal discharge. No evidence was introduced by the defense.

During closing argument the assistant State's Attorney made certain remarks which defendant claims were so prejudicial as to deny him a fair trial. We have carefully reviewed the record of this case including the arguments of counsel. We do not consider it necessary to recite the argument in detail. The prosecutor referred to the defendant as a pervert, a weasel and a moron; told the jury that the defendant, who raped his mother's friend, would rape a dog and would rape each and every member of the jury; told the jury that the defendant would always be a danger to society, even if he lived to be 80 years old; and told the jury that they should fix a punishment of at least 199 years. Objections to some of these remarks were sustained and the jury was instructed to disregard them. However, the prejudicial effect of an improper argument cannot always be erased from the minds of the jurors by an admonishment from the court. In the trial of sex offenses, extreme care is demanded to prevent prejudicial argument which might deprive the defendant of a fair trial. (*People* v. *Anderson,* 406 Ill. 585.) This is particularly true in cases where the jury fixes the sentence. There was no evidence in the record to justify characterizing the defendant as a pervert or moron, terms which imply a propensity toward continuing deviate sexual conduct. In *People* v. *Fort,* 14 Ill.2d 491, we reversed a rape conviction where the prosecutor said that the defendant was a rapist before the crime and that he would always be a rapist, and in *People* v. *Kirkendoll,* 415 Ill. 404, we reversed because the prosecutor characterized the defendant as a sex maniac and a robber-rapist. Likewise, in the present case there was no justification for telling the jury that the defendant would rape a dog and would rape all the members of the jury. These remarks were clearly prejudicial and the prosecutor's improper conduct could not be cured by an admonishment to the jury. The effectiveness of the prejudicial argument is best demonstrated by the fact that the jury fixed the defendant's

punishment at 199 years. Because of this improper argument, the judgment must be reversed and the cause remanded for a new trial.

We shall briefly consider the other assignments of error, since they relate to matters which might arise upon a new trial. Defendant here points out that the complaint made by Mrs. West occurred several hours after the event. In view of all of the surrounding circumstances in the case at bar it cannot be said that the trial court committed error in allowing such testimony to go to the jury. The time lapse between the complaint and the occurrence will naturally vary in accordance with the circumstances of each particular case and there is no definite limit of time within which the complaint must be made. *People* v. *Ristau,* 363 Ill. 583.

Defendant also points out that there was no outcry or call for help during any of the time covered by the course of events constituting the period of the crime. Mrs. West testified she believed that no one was home and was terrified. Although several other parties resided in the premises defendant did not produce one witness to state that there was anyone at home at the time in question. The fact that Mrs. West did not cry out for help was brought out before the jury and was a circumstance which the jury could properly consider as bearing upon the credibility of Mrs. West's testimony that she was forcibly raped. However, this fact was not conclusive and the jury could properly find that the evidence established beyond a reasonable doubt that the defendant forcibly raped Mrs. West.

Although the defendant refused to sign a statement, Detective Ryan testified that at the police station Mrs. West pointed out the defendant as the man who raped her and the defendant said nothing and just stood there. He was then placed back in his cell. Defendant also had remained silent when in the presence of his family during the arrest episode he was expressly informed that he was being charged with the rape of Mrs. West. In *People* v. *Smith,*

25 Ill.2d 219, at page 224, the proposition concerning a defendant's failure to deny accusations is discussed. Under the authorities there cited we believe the trial court committed no error in admitting this testimony. There is no question that the accused heard the accusation. The accusations made both in his home and in the police station were under circumstances which allowed him an opportunity to reply and where a man similarly situated would ordinarily have denied the imputation were he innocent.

For the reasons expressed herein, the judgment of the criminal court of Cook County is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*