606 N.E.2d 1174 (1992)
153 Ill.2d 365
180 Ill.Dec. 97
The PEOPLE of the State of Illinois, Appellant,
v.
Anthony SPEIGHT et al., Appellees.
No. 73084.
Supreme Court of Illinois.
November 19, 1992.
Rehearing Denied February 1, 1993.
*1175 Roland W. Burris, Atty. Gen., Springfield, and Jack O'Malley, State's Atty., Chicago (Terence M. Madsen, Asst. Atty. Gen., Chicago, and Renee Goldfarb, James E. Fitzgerald, Andrew R. Dalkin, and Randall E. Roberts, Asst. State's Attys., of counsel), for the People.
Michael J. Pelletier, Deputy Defender, and Martin Carlson, Asst. Appellate Defender, Office of the State Appellate Defender, Chicago (Michael T. Benz, Chapman and Cutler, Chicago, of counsel), for appellee Anthony D. Speight.
Rita Fry, Public Defender, Chicago (Donald S. Honchell, Asst. Public Defender, of counsel), Chicago, for appellee Melvin Whitten.
Justice CLARK delivered the opinion of the court:
Defendants, Anthony Speight and Melvin Whitten, were charged in the circuit court of Cook County with armed robbery of Grady Guilty and attempted armed robbery of Patricia Gamble. After a bench trial, Whitten was convicted and sentenced to six years in prison, while Speight was found guilty of the same charges after a simultaneous jury trial. Speight was sentenced to 15 years in prison.
The appellate court reversed the convictions of both defendants and remanded for a new trial. (222 Ill.App.3d 766, 165 Ill. Dec. 213, 584 N.E.2d 392.) The appellate court held that the trial court erred in Whitten's case when it sua sponte took judicial notice of facts which partially discredited a defense witness. Speight's conviction was reversed based upon the improper introduction of evidence of other crimes. (222 Ill.App.3d at 768, 165 Ill.Dec. 213, 584 N.E.2d 392.) We granted the State's petition for leave to appeal (134 Ill.2d R. 315). In addition, defendant Speight has requested cross-relief (134 Ill.2d R. 315(g)), arguing that (1) the State's definition of reasonable doubt in its closing argument as "something substantial" improperly shifted the burden of proof, (2) the State's misstatement of the law in its closing argument regarding the use at trial of tape-recorded statements was prejudicial and improperly implied that defense counsel was trying to confuse the jury, and (3) the cumulative impact of the prosecutorial misconduct during closing argument and the improper evidence of other crimes requires reversal of his convictions.
Testimony at trial revealed that on Thursday, January 14, 1988, at approximately 5:45 p.m., Grady Guilty and his cousin Patricia Gamble were walking by an alley near the corner of Jackson and Sacramento Streets when two black men stepped in front of them. One man said to them, "Hey, get back and give it up." According to Guilty, one of the men, allegedly defendant Speight, was dark-skinned and wore a green field jacket and a black skullcap on his head. The other man, allegedly defendant Whitten, was lighter-skinned and wore a black navy "peacoat." Guilty testified that the darker-skinned man pushed him back into the alley and demanded that Guilty give him his money. Guilty testified that he gave him $37. Meanwhile, the lighter-skinned man grabbed Gamble around her collar, held a knife to her throat, and frisked her. Gamble did not have any money, and the assailants told Gamble and Guilty to walk down the alley and not look back.
After walking a short distance, Guilty turned back and followed the two men for several blocks to a gas station. Guilty phoned the police to report the robbery and described the two men. Minutes later, the police picked up Guilty and drove him to where defendants Speight and Whitten were being detained. Guilty positively identified the two men as the two who had just robbed Gamble and him, stating that the darker-skinned man took his money and the lighter-skinned man possessed the knife. At trial, both Guilty and Gamble identified the lighter-skinned man as defendant Whitten and the darker-skinned man as defendant Speight.
We will first address whether defendant Speight was denied a fair trial. The appellate *1176 court reversed Speight's convictions for armed robbery and attempted armed robbery due to testimony that Speight was carrying a "pony pack" at the time of his arrest. (222 Ill.App.3d at 770, 165 Ill.Dec. 213, 584 N.E.2d 392.) Because the appellate court held that Speight was denied a fair trial due to the introduction of this "pony pack" evidence, it refused to consider Speight's other claims of error which he now raises in his motion for cross-relief. (222 Ill.App.3d at 770, 165 Ill.Dec. 213, 584 N.E.2d 392.) For reasons of judicial economy, we will address Speight's claims of error which were raised before the appellate court, but not resolved.
Before this court, the State responds to all of Speight's claims of error in the same fashion, i.e., Speight suffered no prejudice because any alleged error was cured when the trial judge admonished the jury after each alleged error to disregard the improper testimony or statement. Further, even if the trial judge's admonishments were insufficient to cure the alleged errors, the State claims the errors were harmless due to the overwhelming evidence against defendant.
We now reverse the appellate court, and will discuss each error in turn.
During direct examination, the prosecutor elicited the following testimony from Officer Touss regarding drug paraphernalia found on defendant Speight at the time of his arrest:
"Q. [Prosecutor]: In the course of this search what, if anything, did you discover, Officer?
A. [Officer Touss]: $27.
* * * * * *
Q. Did you find anything else in the course of your search of this individual?
A. Yes.
Q. What was that?
A. There was cigarettes, some keys, there was some empty pony pack.

Q. What is a pony pack, officer?

A. It is a piece of white paper approximately four by four commonly used to
[Defense Counsel]: Objection.
[Court]: Sustained. The jury will disregard testimony concerning anything that has been related, has been called a pony pack.
Q. [Prosecutor]: What did you do with those other items?
A. Turned them over to the gentleman." (Emphasis added.)
A "pony pack" is a piece of white paper used to conceal cocaine.
"Evidence of crimes for which a defendant is not on trial is inadmissible if relevant merely to establish his propensity to commit crime." (People v. Thingvold (1991), 145 Ill.2d 441, 452, 164 Ill.Dec. 877, 584 N.E.2d 89; People v. Lindgren (1980), 79 Ill.2d 129, 137, 37 Ill.Dec. 348, 402 N.E.2d 238.) "Such evidence overpersuades the jury, which might convict the defendant only because it feels he is a bad person deserving punishment." (Thingvold, 145 Ill.2d at 452, 164 Ill.Dec. 877, 584 N.E.2d 89; Lindgren, 79 Ill.2d at 137, 37 Ill.Dec. 348, 402 N.E.2d 238.) Here, the appellate court determined that the testimony regarding the "pony pack" was prejudicial to Speight because it implied the defendant used drugs, and further, that the trial judge's admonishment to the jury did not "eradicate" the prejudicial effect of this evidence. 222 Ill.App.3d at 770, 165 Ill.Dec. 213, 584 N.E.2d 392.
We disagree. It is important to note that there was no testimony that Speight possessed cocaine or any other narcotic at the time of his arrest. Indeed, Speight was not charged with an offense involving a controlled substance. There was no testimony that a "pony pack" is drug paraphernalia, as the appellate court concluded. Although we do not doubt that a "pony pack" is the "street" term for the packaging of cocaine, we are not as easily convinced as the appellate court that the jurors necessarily made this inference.
Further, even assuming that the jurors knew what a "pony pack" was, for prejudice to occur it must be assumed that the jurors disregarded the trial judge's admonishment to ignore the testimony about the "pony pack." Generally, "[i]f a timely objection is made at trial, either to improper *1177 interrogation, or to an improper remark by counsel to the jury, the court can, by sustaining the objection or instructing the jury to disregard the answer or remark, usually correct the error." (People v. Carlson (1980), 79 Ill.2d 564, 577, 38 Ill.Dec. 809, 404 N.E.2d 233; People v. Baptist (1979), 76 Ill.2d 19, 30, 27 Ill.Dec. 792, 389 N.E.2d 1200; People v. Barrow (1989), 133 Ill.2d 226, 266, 139 Ill.Dec. 728, 549 N.E.2d 240; People v. Morgan (1986), 112 Ill.2d 111, 135, 97 Ill.Dec. 430, 492 N.E.2d 1303; People v. Terry (1984), 99 Ill.2d 508, 517, 77 Ill.Dec. 442, 460 N.E.2d 746; People v. Hampton (1969), 44 Ill.2d 41, 253 N.E.2d 385.) However, in People v. Garreau (1963), 27 Ill.2d 388, 391, 189 N.E.2d 287, this court deemed the prosecutor's remarks so prejudicial that the trial judge's admonishment to the jury did not cure the error. In Garreau:
"[The prosecutor] referred to the defendant as a pervert, a weasel and a moron; told the jury that the defendant, who raped his mother's friend, would rape a dog and would rape each and every member of the jury; told the jury that the defendant would always be a danger to society, even if he lived to be 80 years old; and told the jury that they should fix a punishment of at least 199 years." Garreau, 27 Ill.2d at 391, 189 N.E.2d 287.
In Speight's case, we find that the judge's prompt action in sustaining counsel's objection and instructing the jurors to disregard the "pony pack" evidence cured any alleged error. Following the admonishment, the prosecutor never revisited this evidence, and thus, we do not think Speight was prejudiced by this testimony.
The second error at Speight's trial occurred during rebuttal when the prosecutor attempted to define reasonable doubt for the jury:
"[Prosecutor]: Reasonable doubt, well what does reasonable doubt mean? It means a doubt that has to be substantial, ladies and gentleman." (Emphasis added.)
Immediately after this statement, the trial judge sustained defense counsel's objection, and admonished the jury:
"[Trial Judge]: Ladies and gentlemen, I will tell you what the law is in this case. And [the prosecutor's] statement of what the law is is not correct."
The law in Illinois is clear that neither the court nor counsel should attempt to define the reasonable doubt standard for the jury. (See People v. Malmenato (1958), 14 Ill.2d 52, 61, 150 N.E.2d 806; People v. Cagle (1969), 41 Ill.2d 528, 536, 244 N.E.2d 200.) However, in this case, we do not find that the prosecutor's attempt to define reasonable doubt caused Speight substantial prejudice. (See People v. Collins (1985), 106 Ill.2d 237, 276, 87 Ill.Dec. 910, 478 N.E.2d 267; Baptist, 76 Ill.2d at 29, 27 Ill.Dec. 792, 389 N.E.2d 1200.) The prosecutor did not suggest to the jury that the State had no burden of proof or attempt to shift the burden to the defendant (see People v. Starks (1983), 116 Ill.App.3d 384, 395, 71 Ill.Dec. 931, 451 N.E.2d 1298). The prosecutor did not reduce the State's burden of proof to a pro forma or minor detail (see People v. Eddington (1984), 129 Ill.App.3d 745, 780, 84 Ill.Dec. 887, 473 N.E.2d 103; People v. Frazier (1982), 107 Ill.App.3d 1096, 1102, 63 Ill.Dec. 692, 438 N.E.2d 623; People v. Martinez (1979), 76 Ill.App.3d 280, 284, 32 Ill.Dec. 139, 395 N.E.2d 86), nor was an "involved instruction" on reasonable doubt given to the jury (see People v. Viser (1975), 62 Ill.2d 568, 584, 343 N.E.2d 903; Cagle, 41 Ill.2d at 536, 244 N.E.2d 200).
Immediately after the prosecutor's improper statement, the trial judge sustained defense counsel's objection and admonished the jury that he would tell the jury what the law is, and that the prosecutor's statement of the law was not correct. Subsequently, the jury was properly instructed on reasonable doubt. Thus, because the trial judge admonished the jury to disregard the prosecutor's improper statement (Baptist, 76 Ill.2d at 30, 27 Ill.Dec. 792, 389 N.E.2d 1200; People v. Peebles (1984), 125 Ill.App.3d 213, 221, 80 Ill.Dec. 427, 465 N.E.2d 539), and because the jury was *1178 properly instructed on reasonable doubt, we find that Speight suffered no prejudice (Barrow, 133 Ill.2d at 266, 139 Ill.Dec. 728, 549 N.E.2d 240; People v. Bell (1983), 113 Ill.App.3d 588, 600, 69 Ill.Dec. 474, 447 N.E.2d 909; People v. Amos (1977), 46 Ill.App.3d 899, 902, 5 Ill.Dec. 538, 361 N.E.2d 861; cf. People v. Weinstein (1966), 35 Ill.2d 467, 220 N.E.2d 432).
The third error at Speight's trial also occurred during the State's rebuttal. Earlier in the trial, Officer Rybicki testified for the State that once in custody, Speight told him and Assistant State's Attorney Axelrod that on January 14, 1988, he and defendant Whitten were walking near the intersection of Jackson and Sacramento Streets when they saw a black male and female walking near an alley. According to Speight, Whitten approached the couple with the intention of stealing their money, but that he (Speight) had no involvement in the incident. Rybicki stated that Speight refused to commit this statement to writing. On cross-examination, Rybicki conceded that although court reporters and tape-recorders were available to transcribe or record Speight's statement, none was used. Subsequently, during closing argument, defense counsel questioned whether the statement was made because it was not written down, transcribed by a court reporter or tape-recorded. On rebuttal, the following exchange took place:
"[Prosecutor]: No written statement taken by this man. He refused to sign a written statement. No tape-recorded [sic], counsel knows we can't use that in court.

[Defense counsel]: Objection.
[Trial Judge]: Sustained.
[Defense counsel]: Ask counsel be admonished.
[Trial Judge]: That is an improper statement, [prosecutor], you know that. The jury will disregard the last statement of [the prosecutor] concerning the use of tape recorders." (Emphasis added.)
The prosecutor's statement, that "counsel knows we can't use [a tape-recorded statement] in court," misstates the law in Illinois. (See People v. Williams (1985), 109 Ill.2d 327, 338, 93 Ill.Dec. 788, 487 N.E.2d 613; People v. McCommon (1979), 79 Ill.App.3d 853, 35 Ill.Dec. 390, 399 N.E.2d 224.) Defendant argues that the prosecutor's misstatement of the law denied him the opportunity to persuade the jury that Speight never made the statement about which Officer Rybicki testified. We disagree, and find that the trial judge's admonishment to the jury to disregard the prosecutor's improper statement cured the error. (See Baptist, 76 Ill.2d at 30, 27 Ill.Dec. 792, 389 N.E.2d 1200; Peebles, 125 Ill.App.3d 213, 80 Ill.Dec. 427, 465 N.E.2d 539.) Moreover, we note that through his cross-examination of Rybicki and during closing argument, defense counsel argued to the jury that Speight's statement was never made given that it was not tape-recorded or transcribed by a court reporter, although such means were readily available to the State.
Finally, Speight, citing People v. Whitlow (1982), 89 Ill.2d 322, 60 Ill.Dec. 587, 433 N.E.2d 629, argues that the cumulative impact of the prosecutorial misconduct during closing argument and the improper evidence of the "pony pack" requires reversal of Speight's convictions. Certainly, while individual trial errors may not require a reversal, those same errors considered together may have the cumulative effect of denying defendant a fair trial. (See People v. Albanese (1984), 102 Ill.2d 54, 83, 79 Ill.Dec. 608, 464 N.E.2d 206; Whitlow, 89 Ill.2d at 341, 60 Ill.Dec. 587, 433 N.E.2d 629.) In this case, however, we find that Speight has failed to establish cumulative error. First, the trial judge took corrective action in each of the three instances defendant alleges error. The trial judge in each instance promptly sustained the defense counsel's objections and admonished the jury to disregard the improper evidence and statements. Such prompt action prevented prejudice to Speight and insured that he received a fair trial. Further, even if we were to presume that the trial judge's admonishments to the jury were insufficient to cure the alleged errors, we would agree with the State that *1179 the alleged errors were harmless. The evidence against Speight was overwhelming. Grady Guilty identified the two attackers minutes after the robbery, in the same vicinity of the crime. Officer Rybicki testified that Speight told him he was with defendant Whitten when Whitten approached Guilty and Gamble to rob them, but that he did not participate in the robbery. At trial, both Grady Guilty and Patricia Gamble identified Speight in court as one of the two robbers. Although Patricia Gamble was unable to identify Speight in a lineup during the evening of January 14, it is important to note that it was defendant Whitten who allegedly held the knife to her throat, not Speight. Given the overwhelming evidence, we find the cumulative impact of these trial errors did not affect the jury's verdict.
We will now address whether defendant Whitten received a fair trial. At trial, Reverend James Clasberry testified on behalf of Whitten. Rev. Clasberry is a church minister, Masonic lodge president and the manager of the grocery store where defendant worked at the time of the incident. During direct examination, Rev. Clasberry testified to Whitten's reputation in the community. In addition, Rev. Clasberry stated that on January 14, 1988, defendant worked at the grocery store and that he left at approximately 5:30 p.m. Rev. Clasberry stated that he remembered this because he lent Whitten money that day. On cross-examination, the prosecutor questioned Rev. Clasberry's recollection of January 14:
"Q. [Prosecutor]: Now did you review the records for January 14, 1988, to see when Mr. Whitten started and when Mr. Whitten left that day, sir?
[Defense counsel]: Objection, no alibi.
[Court]: Overruled.
A. [Rev. Clasberry]: At the time I am the one that loaned him, you know, the money he asked me for. I am the one who checked him out.
Q. [Prosecutor]: You are the one who checked him out?
A. Yes.
Q. You have records of that?
A. Yes.
Q. Did you review those records before you came to court?
A. No, I did not.
Q. You are using your own personal memory?
A. The reason why I told you because I was, I am an investigator for him coming into the Masonic organization. He supposed [sic] to come in that Saturday, which was the 15th of January, 1988.

Q. You are saying the 14th was a Friday?

A. I am not for sure. I am just, you know, I know on a Saturday he supposed [sic] to came [sic] in. I am not for sure." (Emphasis added.)
Later, on cross-examination, Rev. Clasberry was again asked to clarify his remembrance of these dates, to which he replied:
"I am saying that on the 14th I loaned him some money. I know it was that day because the 15th he supposed [sic] to came [sic] into the Masonic organization. I got a call from his wife."
After the closing arguments and in his findings of fact, the trial judge stated:
"I have had an opportunity to look at a calendar and I take judicial notice of the fact that the 15th was a Friday and the 14th was a Thursday, not a Saturday.

If Reverend Clasberry was initially right and the rites of initiation into the Masonic lodge were to take place on Saturday, [the] 14th was a Thursday not the Friday next.
I have reason to think maybe Reverend Clasberry's remembrance of these dates is legitimately and honestly in error.
But I do believe that he has testified truthfully and completely about his knowledge of the reputation of Mr. Whitten." (Emphasis added.)
Prior to this, no party had requested the trial judge to take judicial notice of the dates.
The appellate court reversed Whitten's convictions and determined that "[a] trial *1180 judge may, on rare occasions, take sua sponte judicial notice of facts during a trial, however, not after the close of evidence, at the report of his findings. If taken during the course of the trial, such evidence may be argued, explained or rebutted." (Emphasis in original.) (222 Ill. App.3d at 771, 165 Ill.Dec. 213, 584 N.E.2d 392.) The appellate court held that the trial judge's actions in sua sponte taking judicial notice amounted to plain error. 222 Ill.App.3d at 773, 165 Ill.Dec. 213, 584 N.E.2d 392.
The State initially argues that since Whitten failed to object at trial and raise this issue in his written post-trial motion, he has waived review of this issue. "It is a well-established principle that issues not raised at the trial court level may not be raised for the first time on review." (People v. Enoch (1988), 122 Ill.2d 176, 186-87, 119 Ill.Dec. 265, 522 N.E.2d 1124.) Both an objection at trial and a written post-trial motion raising the issue are necessary to preserve an alleged error. (See Enoch, 122 Ill.2d at 186, 119 Ill.Dec. 265, 522 N.E.2d 1124.) In this case, Whitten failed to properly preserve this issue for our review. However, the waiver rule is not without exception. Supreme Court Rule 615(a) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." (134 Ill.2d R. 615(a).) The plain error rule permits a reviewing court to consider a trial error not properly preserved for review in two circumstances: (1) where the evidence is closely balanced, or (2) where the error was of such magnitude that the defendant was denied a fair trial. (People v. Nitz (1991), 143 Ill.2d 82, 157 Ill.Dec. 431, 572 N.E.2d 895; People v. Herrett (1990), 137 Ill.2d 195, 209-10, 148 Ill.Dec. 695, 561 N.E.2d 1.) The plain error rule guards against "the `possibility that an innocent person may have been convicted due to some error which is obvious from the record, but not properly preserved.'" Nitz, 143 Ill.2d at 108, 157 Ill.Dec. 431, 572 N.E.2d 895, quoting People v. Carlson (1980), 79 Ill.2d 564, 576-77, 38 Ill.Dec. 809, 404 N.E.2d 233.
However, after carefully considering Whitten's argument, we find that even if the trial judge erred in sua sponte taking judicial notice that January 15 was a Friday, and January 14 was a Thursday, such error was harmless. First, the evidence against Whitten was overwhelming. Although the appellate court stated that the evidence against Whitten was not so overwhelming, "including the disputed identification evidence" (222 Ill.App.3d at 773, 165 Ill.Dec. 213, 584 N.E.2d 392), we disagree with the appellate court's interpretation of the record. There was simply no "disputed identification evidence" in terms of Whitten. Grady Guilty identified Whitten as one of the two attackers minutes after the robbery, a few blocks from the crime scene. Whitten was found with a knife in his pocket, which both Guilty and Gamble identified in court as the knife Whitten held to Gamble's throat. Patricia Gamble identified Whitten in a police lineup approximately 40 minutes after the robbery. At trial, both Grady Guilty and Patricia Gamble identified Whitten in court as one of the two robbers.
Second, the trial judge's actions in taking judicial notice could not have prejudiced Whitten because Rev. Clasberry testified as a character witness, not as an alibi witness. In his brief to this court, Whitten states that "[t]o challenge the testimony implicating him in the charged offenses, defendant Melvin Whitten offered the testimony of his employer, Rev. James Clasberry, to establish Whitten's presence elsewhere at the time of the crimes." (Emphasis added.) Ostensibly, defendant is arguing that Rev. Clasberry was offered as an alibi witness.
This assertion, however, conflicts with defense counsel's statements at trial. When the prosecutor questioned Rev. Clasberry on cross-examination about the first time Whitten worked at the grocery store, defense counsel objected to the question arguing that "the evidence presented by Mr. Clasberry is basically reputation evidence." (Emphasis added.) Later, on cross-examination, when the prosecutor specifically asked Rev. Clasberry if he reviewed *1181 the store's records from January 14, 1988, to see when Whitten arrived at work and when he left that day, defense counsel objected, stating "no alibi." (Emphasis added.) Finally, during closing argument, defense counsel did not point to Rev. Clasberry's testimony as evidence that Whitten was elsewhere at the time of the armed robbery of Grady Guilty and Patricia Gamble. Rather, defense counsel again stressed that Rev. Clasberry's testimony spoke of Whitten's reputation and character. Based on these statements, it is apparent that the purpose of Rev. Clasberry's testimony was to establish Whitten's reputation and character in the community, and not to establish that Whitten was at Debbies' Grocery at 5:30 p.m. on January 14, 1988.
Moreover, if the purpose of Rev. Clasberry's testimony was to establish Whitten's presence elsewhere at the time of the crime, Whitten had an obligation to reveal this information to the State prior to trial. (See 134 Ill.2d R. 413(d)(iii).) Pursuant to Supreme Court Rule 413(d)(iii), the defendant, if he intends to prove an alibi, must furnish "specific information as to the place where he maintains he was at the time of the alleged offense." (See 134 Ill.2d R.413(d)(iii).) Whitten failed to reveal this required information in the pretrial discovery. Instead, defense counsel filed an amended answer to the State's motion for pretrial discovery which merely informed the State that "defendant may assert alibi time and place to be supplied," and that Rev. Clasberry might be called as a witness. There is no other information in the pretrial discovery to show that Whitten complied with this rule.
Finally, we note that the trial judge did believe Rev. Clasberry's testimony for the purpose for which it was offered. The trial judge stated: "But I do believe that [Rev. Clasberry] has testified truthfully and completely about his knowledge of the reputation of Mr. Whitten." Thus, the fact that the trial judge took judicial notice of the dates apparently did not impact the weight given to Rev. Clasberry's testimony regarding Whitten's character and reputation in the community.
In light of our disposition of Whitten's case, we find it is unnecessary to respond to the State's assertion that this court adopt Rule 201 of the Federal Rules of Evidence. Rule 201 states that "[a] court may take judicial notice, whether requested or not" (Fed.R.Evid. 201(c)), "at any stage of the proceeding" (Fed.R.Evid. 201(f)). This court has previously considered Rule 201, and decided not to adopt it as a rule of evidence in Illinois. We see no reason at this time to reconsider this issue.
For the reasons stated, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.
Appellate court reversed; circuit court affirmed.