# Illinois Official Reports

## Appellate Court

---

### *People v. Thomas*, 2014 IL App (2d) 121203

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BERNARD THOMAS, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-1203 |
| Filed | August 5, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for retail theft where no definition of reasonable doubt was initially given to the jury and the trial court, in response to the deliberating jury's request for the "legal definition" of reasonable doubt, responded that the definition was to be determined by the jury there was no error, plain or otherwise, since the response was correct, regardless of defendant's contention that the response would lead the jury to apply a standard that would be less than proof beyond a reasonable doubt. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 12-CF-697; the Hon. John J. Kinsella, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Thomas A. Lilien and Steven E. Wiltgen, both of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman and James P. French, Assistant State's Attorneys, of counsel), for the People. |

| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion. |
| | Justice Spence concurred in the judgment and opinion. |
| | Justice Hudson specially concurred, with opinion. |

**OPINION**

¶ 1     On September 12, 2013, a jury found the defendant, Bernard Thomas, guilty of one count of retail theft (720 ILCS 5/16-25(a)(1) (West 2010)). The sole issue raised in this appeal is the constitutional validity of the trial court's statement to the jury–in response to a written question asking for the legal definition of the term "reasonable doubt"–that "[i]t is for you to determine." In arguing that this response violated his due process right to have the State held to the burden of proving his guilt beyond a reasonable doubt, the defendant relies on two recent appellate court cases, *People v. Turman*, 2011 IL App (1st) 091019, and *People v. Franklin*, 2012 IL App (3d) 100618, which held that it is reversible error *per se* for a trial court to tell a jury that it must define "reasonable doubt" for itself. We view this holding as questionable under applicable precedent of the United States Supreme Court and the Illinois Supreme Court. We instead hold that a court must consider the totality of the circumstances and determine whether there is a reasonable likelihood that the jury applied a lesser standard than beyond a reasonable doubt. We conclude that this standard is not met here and therefore affirm the defendant's conviction.

¶ 2                                      BACKGROUND
¶ 3     The defendant was indicted on two counts of felony retail theft. Count I alleged that, on March 27, 2012, he took several bottles of liquor from a Jewel-Osco store in Elmhurst with the intent to permanently deprive Jewel-Osco of the possession and benefit of the merchandise, having been previously convicted of theft (720 ILCS 5/16-25(a)(1) (West 2010)). Count II alleged the same retail theft, with the added element that the value of the liquor taken was over $300 (thereby increasing the sentence (720 ILCS 5/16-25(f)(3) (West 2010))).

¶ 4     The jury trial commenced on September 11, 2012. During jury selection, the trial court made comments giving the prospective jurors an overview of the case, including the charges and the schedule of the trial. With respect to the State's burden of proof, the trial court stated that: the State bore the burden of proving the charges beyond a reasonable doubt; the burden of proof never shifted to the defendant; the defendant was presumed innocent of the charges throughout the trial; at the end of the trial, if the State did not prove its case beyond a reasonable doubt, the jurors would be required to find the defendant not guilty; and if the jurors found that the State had sustained its burden of proof beyond a reasonable doubt, they would be required to find the defendant guilty. The trial court did not make any comments about the meaning of the term "reasonable doubt."

¶ 5     Nathan Bown, an assistant director for the Osco portion of the Jewel-Osco store, testified that on February 11, 2012, he noticed that an unusual amount of liquor was missing from one of the shelves in aisle 7. He checked the surveillance video for the day before and saw an African-American man placing bottles of liquor inside his jacket, which was puffy and black

with a furry lining at the neck. The man later walked out the northwest entrance of the store. Bown did not call the police, because he did not know who the man was, but he monitored aisle 7 closely after that. Bown later observed, via video, the same man stealing liquor from aisle 7 on February 20 and 29 and March 12, 14, and 27, 2012. As of March 27, he still had not contacted the police because he still did not know who the man was. However, he backed up the surveillance video to preserve it.

¶ 6    Rafael Lopez, a Jewel-Osco employee, testified that he was working at the store on March 31, 2012. About 3 p.m. that day, Lopez saw a man leave the store through the entrance doors. The man, who walked right past him, was African-American and had a tattoo on his neck, and he was wearing a heavy winter coat with a furry lining, although it was a warm afternoon. Lopez noticed that he had a big bulge in his midsection. Lopez identified the defendant in court as the man he saw leaving the store on that day and as the man shown in photographs of aisle 7 taken on that day. Lopez continued to watch as the defendant approached the passenger side of a gold four-door vehicle with an older African-American man in the driver's seat. The defendant got into the car. As the car drove away, Lopez was behind it and made a note of the number of the license plate, which had a "handicapped" emblem. At trial, he testified that the number was either 117346 or 117396 (he could not tell whether he had written down a "4" or a"9"). Lopez notified his manager.

¶ 7    On April 1, Bown learned that another potential theft of liquor had occurred on March 31. When he checked the surveillance video for that day, he saw the same man he had seen earlier taking bottles of liquor and then walking out the northwest entrance. As on earlier occasions, the red lights on the anti-theft towers activated. Bown called the Elmhurst police and gave them the surveillance video and the license plate number observed by Lopez. Lopez was interviewed by the Elmhurst police, who showed him an array of six photographs. He identified a photograph of the defendant as the man he had seen leaving the store.

¶ 8    On April 5, Bown saw a man in the store who looked like the suspect in the surveillance videos. The man was pushing a cart containing some liquor bottles. Bown called the police. He then began following the man, whom he identified in court as the defendant. After he followed the defendant up and down a few aisles, the defendant abandoned his cart and left the store. The defendant did not steal anything on April 5. Bown testified that he later determined, by looking at the video, that on March 27 the defendant had stolen six bottles of Ciroc vodka and three bottles of Hennessey cognac. Bown also generated a receipt showing the total value of the liquor taken on that date, which exceeded $300 ($38.99 per bottle of Ciroc vodka and $32.99 per bottle of Hennessey cognac).

¶ 9    Police officer Alexander Kefaloukas of the Elmhurst police department testified that he went to the Jewel-Osco store at about 5:30 p.m. on April 5, 2012, after a report was received about a potential theft in progress. He met with a store employee who gave him a description of a suspect, which he relayed to other police officers.

¶ 10   Elmhurst police officer Michael Campise testified that he responded to the Jewel-Osco store at about 5:30 p.m. on April 5. While there, he saw an African-American man loitering outside the store. The man walked to a tan Chevy Lumina, which had a license plate with a "handicapped" emblem and the number 117346, and got in. Campise told other officers to detain the car if it drove away. He later learned that this man was Horace Smith.

¶ 11   Campise received a report that the suspect was leaving the store, and he arrested the defendant. Kefaloukas joined him and they searched the defendant, who was wearing a black

"poofy" jacket with fur on the hood. The defendant had a small amount of change in his pocket but no other money, and no credit or debit cards.

¶ 12    Elmhurst police officer Edward Coughlin interviewed the defendant at the police station at about 6:30 p.m. He gave the defendant *Miranda* warnings. The defendant, who had a tattoo on the side of his neck, appeared agitated and said that he had not stolen anything. Coughlin told him that they were interested in prior incidents, not events at the Jewel-Osco that day. The defendant said that he had been at the store to pick up some things for his wife. Coughlin expressed skepticism, noting that the defendant had only six cents on him when he was brought to the police station. The defendant contended that a police officer on the street had taken his credit card. However, after Coughlin showed the defendant a surveillance DVD and mentioned the dates that the defendant had been seen in the store, the defendant admitted that he had stolen liquor from the store. The defendant stated that Smith would drive him to the store, where he would take bottles of liquor from the shelf and put them in his jacket. He would then sell the liquor on the street to get money for his heroin habit. His habit cost him about $60 per day. Coughlin had seen people under the influence of narcotics before and the defendant did not seem to be under the influence at the time of the interview.

¶ 13    After closing arguments, the trial court instructed the jury. As part of the instructions, the trial court gave Illinois Pattern Jury Instructions, Criminal, No. 2.03 (4th ed. Supp. 2009) (hereinafter, IPI Criminal 4th No. 2.03 (Supp. 2009)):

> "The defendant is presumed to be innocent of the charges against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict and is not overcome unless from all the evidence in this case you are convinced beyond a reasonable doubt that he is guilty.
>
> The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence."

¶ 14    The jury sent out three notes during its deliberations. Only the second is at issue here. That note read, "[W]hat is the legal definition of reasonable doubt?" The trial court commented to the parties:

> "It's not the first time I heard that question. I don't think the law in Illinois has changed, nor the position of the Supreme Court. The only question is how do I wish to word my response. My inclination is to say: It is for you to determine; that is for you to determine."

The State assented; the defense suggested that the jurors be told that if they wanted to find the defendant not guilty, they should do so. The trial court then consulted the IPI Criminal and noted that it did not recommend any definition. The trial court's written response read, "It is for you to determine."

¶ 15    The jury found the defendant guilty of count I and not guilty of count II. On October 12, 2012, the defendant was sentenced to six years' imprisonment. After his motion to reconsider the sentence was denied, he filed a timely notice of appeal.

¶ 16                                    ANALYSIS

¶ 17    The sole issue on appeal is whether the trial court violated the defendant's due process rights through its response to the jury's note asking for the legal definition of "reasonable

doubt." The defendant concedes that he did not raise this issue in the trial court (through either a contemporaneous objection or a posttrial motion) and thus the issue is forfeited unless the trial court's actions amounted to plain error. The plain error doctrine allows a reviewing court to consider unpreserved error when "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). The first step in determining whether plain error exists is determining whether an error actually occurred. *People v. Naylor*, 229 Ill. 2d 584, 593 (2008).

¶ 18    The defendant argues that, under *Turman* and *Franklin*, the trial court's response to the jury's question about the definition of "reasonable doubt"–"It is for you to determine"–was plain error. We begin by setting out the fundamental analysis applicable to this issue, as expressed by the United States and Illinois Supreme Courts, before turning to an examination of *Turman*, *Franklin*, and later decisions.

¶ 19                                    A. Constitutional Requirements

¶ 20    The requirement to correctly instruct the jury on fundamentals such as the proper burden of proof is of constitutional dimension. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). However, in considering whether a particular jury instruction violated the defendant's due process rights, "the proper inquiry is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply it." (Emphasis in original.) *Victor v. Nebraska*, 511 U.S. 1, 6 (1994).

¶ 21    In 1994, the United States Supreme Court issued its decision in *Victor*, in which it considered whether the jury instructions defining "reasonable doubt" in two state criminal cases violated due process. The Court began by laying out the analytical framework for such claims:

> "The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. [Citation.] Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, [citation], the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. [Citation.] Rather, 'taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.' " *Id*. at 5 (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)).

¶ 22    The Court then summarized the key issue: "The constitutional question *** is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard." *Id*. at 6. In assessing this likelihood, the court should consider other instructions or comments to the jury that occurred during the trial. See *id*. at 13, 21-22 (considering the other instructions given during the defendants' trials, which provided context for the instructions at issue). Thus, the standard to

be applied in cases such as the one before us is: taken as a whole, were the instructions to the jury such that there is a reasonable likelihood that the jury understood those instructions as allowing a conviction under a lesser standard than proof beyond a reasonable doubt?

¶ 23                               B. Illinois Supreme Court Precedent

¶ 24     There is no dispute that attempts to define the term "reasonable doubt" for jurors are discouraged in Illinois. In *People v. Speight*, 153 Ill. 2d 365, 374 (1992), the Illinois Supreme Court commented that "[t]he law in Illinois is clear that neither the court nor counsel should attempt to define the reasonable doubt standard for the jury." Reflecting this sentiment, there is no recommended jury instruction that would provide such a definition. See Illinois Pattern Jury Instructions, Criminal, No. 2.05, Committee Note, at 78 (4th ed. 2000) ("The Committee recommends that no instruction be given defining the term " 'reasonable doubt.' ").[1]

¶ 25     Nevertheless, it is equally clear that providing a jury with a definition of "reasonable doubt" does not necessarily constitute reversible error. A review of Illinois Supreme Court precedent on this issue demonstrates this: typically, the supreme court finds that giving such a definition either is not error or is harmless error. See, *e.g.*, *People v. Lucas*, 244 Ill. 603, 615 (1910) (expressing no condemnation of the trial court's instruction that the term means "a serious, substantial doubt and not a mere possibility of a doubt"; supreme court held this instruction was not error, noting that "reasonable doubt" need not exclude all possibility of doubt, as that state of certainty was almost unattainable in human affairs (internal quotation marks omitted)); *People v. Moses*, 288 Ill. 281, 285-86 (1919) (commenting that the giving of lengthy instructions is unnecessary because "there is no better definition of the meaning of the words 'reasonable doubt' than the words themselves" but adding that such lengthy definitions are not necessarily reversible error; affirming the conviction); *People v. Malmenato*, 14 Ill. 2d 52, 61 (1958) (although supreme court discouraged the practice of defining "reasonable doubt," trial court's instruction on the topic was not error); *Speight*, 153 Ill. 2d at 374-75 (although "neither the court nor counsel should attempt to define the reasonable doubt standard for the jury," prosecutor's comments were not reversible error in light of trial court's immediate admonishment to the jury to disregard the comments).

¶ 26     One of the few supreme court cases to find that an instruction defining reasonable doubt was reversible error is *People v. Cagle*, 41 Ill. 2d 528, 536 (1969), in which the trial court had instructed the jury that "a doubt, to justify an acquittal, must be reasonable, and it must arise from a candid and impartial investigation and consideration of all the evidence in the case and unless it [meets a standard described at some length], it is insufficient to authorize a verdict of not guilty." (Internal quotation marks omitted.) The supreme court held that this instruction improperly shifted the burden of proof to the defendant by implying that an acquittal must be justified, contrary to the presumption of innocence. In reaching this conclusion, the supreme court noted that it had "repeatedly held that the legal concept of 'reasonable doubt' needs no definition." *Id*. Nevertheless, giving an instruction on the

---

[1]Nothing in Illinois's hands-off approach to defining "reasonable doubt" for jurors is incompatible with *Victor*, in which the Court noted that due process neither requires nor prohibits definitions of the term. *Victor*, 511 U.S. at 5. See also *People v. Failor*, 271 Ill. App. 3d 968, 971 (1995) (*Victor* did not conflict with the prevailing practice in Illinois of not defining "reasonable doubt" and trial court did not err in refusing to provide jurors with a definition of the term).

concept was not necessarily prejudicial or reversible error, so long as the instruction did not improperly minimize the State's burden of proof or attempt to shift that burden to the defendant. *Id*.

¶ 27    In the years since *Victor*, the Illinois Supreme Court has only rarely addressed the issue of defining "reasonable doubt," but the essential principles are unchanged. In *People v. Keene*, 169 Ill. 2d 1 (1995), a case involving prosecutorial comments about reasonable doubt, the supreme court reaffirmed that, although it is unwise, defining the term is not automatic error:

> "This court has cautioned against attempts by counsel as well as trial judges to explain the reasonable doubt standard. [Citation.] The danger is that, no matter how well-intentioned, the attempt may distort the standard to the prejudice of the defendant. *If sufficient prejudice results*, reversal is warranted." (Emphasis added.) *Id*. at 24-25.

In *Keene*, the court held that the prosecutor's comments did not rise to the level of plain error. More recently, the supreme court issued *People v. Green*, 225 Ill. 2d 612 (2007), in which it considered whether the failure to formally instruct the jury that the State bore the burden of proof as to each and every element of the offense (as part of Illinois Pattern Jury Instructions, Criminal, No. 14.04 (4th ed. 2000)) rendered the trial fundamentally unfair. The supreme court held that the essential requirements for a fair trial had been met because IPI Criminal 4th No. 2.03 (Supp. 2009) (which lays out the State's general burden of proof and the presumption of the defendant's innocence) had been given. *Green*, 225 Ill. 2d at 624 ("once IPI Criminal 4th No. 2.03 was given, the constitutional threshold was met"). Although it does not directly bear on the issue of defining reasonable doubt, *Green* is illuminating because it reflects *Victor*'s emphasis on the constitutional requirement that jurors be told that they must apply the beyond a reasonable doubt standard, and *Victor* holds that it is unimportant whether "reasonable doubt" is defined so long as the proper standard is applied.

¶ 28    Thus, under Illinois Supreme Court precedent, it remains the law in Illinois that defining "reasonable doubt" is discouraged but is not reversible error *per se*.

¶ 29                                C. Turman and Franklin

¶ 30    In 2011, the First District Appellate Court issued *Turman*, 2011 IL App (1st) 091019, ¶ 19, in which it held that the trial court committed reversible error when it answered a jury's request for a definition of "reasonable doubt" by saying that " 'reasonable doubt is not defined under Illinois law. It is for the jury to collectively determine what reasonable doubt is.' " The parties had agreed to this response, and the defendant had not identified it as error in his posttrial motion, instead raising it for the first time on appeal. The appellate court stated that the issue was subject to plain error analysis, rejecting the State's argument that the defendant had acquiesced in the error and could not raise it on appeal. *Id*. ¶ 27.

¶ 31    Analyzing the trial court's response to the jury's question, the *Turman* court held that, although the first part of the response (that the term was not defined under Illinois law) was correct, the second part was error:

> "By instructing the jurors that they should collectively determine what reasonable doubt was, the court allowed the jury to use a standard that in all likelihood was below the threshold of a reasonable doubt standard. *** The effort by the trial court

in this case can be construed as an attempt to define that which the Illinois Supreme Court has said cannot be defined in this way." *Id.* ¶ 25.

The *Turman* court went on to say that the trial court's response was plain error under both prongs of the analysis. The response was error under the first prong because the court viewed the evidence as close, and the response "did not clarify the meaning of reasonable doubt." *Id.* ¶ 27. It also held that, because the error allowed the jury to apply an incorrect standard of proof, it affected the fairness and integrity of the trial and violated the defendant's right to due process, thereby amounting to plain error under the second prong. *Id.*

¶ 32    The *Turman* court did not provide any detailed explanation as to what aspect of the trial court's response created the probability that the jury applied a lesser standard of proof. Was it the use of the word "collectively," which might have suggested that reasonable doubt meant whatever a majority of the group thought, without regard for the beliefs of individual jurors? Or was it simply that the trial court gave some response, and the court read Illinois law as saying that *any* response (other than refusing to answer the question) was automatic error? The *Turman* decision left these questions unanswered.

¶ 33    One year later, the Third District Appellate Court issued *Franklin*, 2012 IL App (3d) 100618. In *Franklin*, the trial court had stated, during jury selection: " 'Beyond a reasonable doubt means beyond a reasonable doubt. It's what each of you individually and collectively, as 12 of you, believe is beyond a reasonable doubt.' " *Id.* ¶ 4. During the State's rebuttal closing, the prosecutor reminded the jurors that the trial judge had told them that " '[r]easonable doubt is what you believe to be reasonable doubt. You decide what reasonable doubt is. Not [defense counsel], not the State, you decide.' " *Id.* ¶ 15. The defendant did not make any contemporaneous objections or raise the issue in his posttrial motion, but raised the issue on appeal.

¶ 34    The majority in *Franklin* began by stating that "[t]he United States Constitution does not prohibit courts from defining reasonable doubt" (citing *Victor*), but "judges in Illinois courts are prohibited from doing so" (citing *Failor* and *Speight*). *Id.* ¶ 24. The *Franklin* majority went on to state that any attempt to define "reasonable doubt" was error *per se*: "A trial court's attempt to explain reasonable doubt is improper because there is no better definition of reasonable doubt than the words themselves." *Id.* ¶ 25; see also *id.* ¶ 27 (the instruction given was improper "because it contravene[d] the Illinois Supreme Court's mandate that trial courts not define reasonable doubt for the jury"). The *Franklin* majority then followed *Turman* in holding that, "by telling jurors that it was for them to collectively determine what reasonable doubt meant," the trial court's instruction created a reasonable likelihood that the jury had convicted the defendant based on a standard of proof less than beyond a reasonable doubt, a structural error requiring reversal. *Id.* ¶ 28.

¶ 35    Justice Carter dissented from this holding. He set out the constitutional requirements for instructing a jury in a criminal trial, including instructions on the presumption of innocence and the State's burden to prove the commission of the offense beyond a reasonable doubt. In particular, he noted the United States Supreme Court's statement that " 'the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so' " and " 'does not require that any particular form of words be used in advising the jury of the government's burden of proof.' " *Id.* ¶ 48 (Carter, J., concurring in part and dissenting in part) (quoting *Victor*, 511 U.S. at 5). Thus, contrary to the majority's approach:

"[T]he United States Supreme Court's ruling in *Victor* establishes that a jury instruction defining reasonable doubt is not automatically erroneous, \*\*\* and that such an instruction does not automatically violate a defendant's right to a fair trial as guaranteed by the due process clause. See *Victor*, 511 U.S. at 5; *Green*, 225 Ill. 2d at 622 (adopting some of the language set forth in *Victor* but in a different context). Indeed, the Supreme Court noted in *Victor* that it had only found that a reasonable doubt instruction violated the due process clause one time in the past. See *Victor*, 511 U.S. at 5. According to the Supreme Court, due process is violated only if under the totality of the circumstances, there is a reasonable likelihood that the jury understood that the instructions allowed it to find the defendant guilty based upon a standard of proof that was less than beyond a reasonable doubt." *Id.*

¶ 36    Justice Carter then reviewed all of the trial court's extensive (and correct) comments to the jury regarding the State's burden of proof, the presumption of innocence, and the meaning of "reasonable doubt," as well as all of the prosecutor's comments (which included the statement that beyond a reasonable doubt was the highest standard of proof available under the law). He concluded that, considering all of the instructions received by the jury, there was not a reasonable likelihood that the jurors believed the trial court's response allowed them to find the defendant guilty under a lesser standard of proof. *Id.* ¶ 49.

¶ 37                    D. Developments Since *Turman* and *Franklin*

¶ 38    Less than six months after it decided *Franklin*, the Third District issued another opinion addressing comments about the meaning of "reasonable doubt." In *People v. Max*, 2012 IL App (3d) 110385, the prosecutor had made two comments about reasonable doubt. During the initial closing argument, the prosecutor acknowledged that the State had the responsibility to prove beyond a reasonable doubt that the defendant engaged in theft and said he thought the jury would find the State had met this standard. He then said, " '[n]ow, beyond a reasonable doubt, there's–there's no dictionary definition of that. I would suggest to you that if you imagine a balance–.' " *Id.* ¶ 40. Defense counsel objected and the objection was sustained. In the defendant's closing, her attorney argued that the State had failed to prove that she took any money, noting that the State had not introduced her financial records or shown that she bought expensive items. *Id.* ¶ 41. On rebuttal, the prosecutor stated: " 'We all know better in our heart of hearts exactly what went on here. And when you know inside your heart of hearts, you know we have met our burden of proof of proving [the defendant] guilty beyond a reasonable doubt, and we don't have to show where she spent the money.' " *Id.* ¶ 42.

¶ 39    Justice Carter wrote the opinion in *Max*, joined by two justices who were not on the panel in *Franklin*. The opinion reiterated much of Justice Carter's dissent in *Franklin* and applied *Victor*'s "totality of the circumstances" test rather than the *per se* approach of *Turman* and *Franklin*. The court then held that, considering all of the information received by the jury in the case, there was not a reasonable likelihood that the jurors understood the prosecutor's comments to mean that they could find the defendant guilty under a lesser standard than proof beyond a reasonable doubt. *Id.* ¶ 56.[2]

---

[2]In *People v. Sullivan*, 2014 IL App (3d) 120312, the Third District (including one of the justices from the *Franklin* majority) once again addressed an attempt to define "reasonable doubt." However,

¶ 40    The First District also appears to have retreated from its position in *Turman*, to the extent that *Turman* held that telling jurors that they must define "reasonable doubt" for themselves violates a defendant's due process rights. In *People v. Johnson*, 2013 IL App (1st) 111317, the trial court had made the following comments during jury selection:

> " 'The State has the burden of proof beyond a reasonable doubt. In Illinois we do not–it is not defined by the Supreme Court or by the State legislature. That's something for you to decide. But if any of you have served on a civil jury, if you use the analogy of a scale, all you have to do is tilt it. And that's proof beyond a preponderance of the evidence.
>
> In a criminal case, if you use the same scale, it's a balance like this. (Indicating.) Proof beyond a reasonable doubt is the highest burden that there is at law in Illinois and the United States.' " *Id*. ¶ 52.

The *Johnson* court rejected the defendant's argument that these comments constituted plain error, stating: "Although we do not condone the reference and comparison to the civil standard, we cannot say that the trial court's comments constitute error, particularly where the court told jurors that reasonable doubt was the highest burden at law and that it was *for them to decide what reasonable doubt meant*." (Emphasis added.) *Id*. ¶ 54. *Johnson* did not cite to either *Turman* or *Franklin*, however.

¶ 41    In *People v. Downs*, 2014 IL App (2d) 121156, this court recently addressed the issue of the proper response to juror confusion about the meaning of reasonable doubt. Like the present case, it involved a jury note asking for a definition of reasonable doubt. However, the note in *Downs* was more detailed and suggested that the jury fundamentally misunderstood the standard: " 'What is your definition of reasonable doubt[:] 80%[,] 70%[, or] 60%?' " *Id*. ¶ 4. The trial court consulted with the parties' attorneys and eventually responded: " 'We cannot give you a definition ***[;] it is [for you] to define ***.' " *Id.* As here, the defendant did not raise the correctness of this response before the trial court, and thus on appeal the issue was subject to plain error analysis.

¶ 42    We began by noting the firm position of Illinois law that no definition of "reasonable doubt" should be given and stated that, "[b]ased on this authority, we believe that it is abundantly clear that giving an *erroneous* definition of 'reasonable doubt' qualifies as error." (Emphasis added.) *Id*. ¶ 22. We then considered whether the trial court's response constituted an erroneous definition of reasonable doubt.

¶ 43    Analyzing *Turman* and *Franklin*, we summarized their holdings as focusing on "(1) the improper instruction that the jury is to collectively determine the meaning of reasonable doubt, and (2) the danger that the jury will convict a defendant on proof that did not meet the reasonable-doubt standard." *Id*. ¶ 27. In *Downs*, the danger that the jury would apply a lesser standard to convict was obvious, in light of the reference in the jury's question to percentages as low as 60 percent. "The question, at best, suggests that the jury was predisposed to use a standard less than reasonable doubt, and the trial court, by telling the jury that the court

---

the court simply distinguished *Turman* and *Franklin* on the ground that those cases involved comments made by the trial judge, whereas *Sullivan* involved a prosecutorial comment, which did "not carry as grave a danger of distorting the reasonable doubt standard." *Id*. ¶ 29. The court concluded that the defendant had not shown that the prosecutor's comment on the reasonable-doubt standard was "so egregious that it risked the jury using a lesser standard to convict" the defendant. *Id*. ¶ 33.

would stay out of it and let the jury do whatever it wanted, only compounded the error." *Id.* ¶ 28. We therefore held that the integrity and fairness of the trial had been impugned, and we reversed the conviction and remanded for a new trial.

¶ 44    Importantly, although in *Downs* we rejected the State's request to depart from *Turman* and *Franklin*, we noted that, because of the peculiar facts relating to the content of the jury's note in *Downs*, we would reverse even if the *per se* error approach of *Turman* and *Franklin* was incorrect:

> "[T]he jury's question regarding reasonable doubt gives us a concrete and undeniable view into the jury's thought process regarding reasonable doubt. By asking if reasonable doubt was 80%, 70%, or 60%, the jury clearly showed that it was already contemplating a standard less than the reasonable-doubt standard required under the law. By instructing the jury that it was 'your duty to define [the term "reasonable doubt,"]' the trial court gave the jury clear license to continue down its mistaken pathway of equating reasonable doubt to some percentage of confidence. The State claims that *Turman* was based on speculation. Even if it were, here we do not have that speculation, because the jury's question provides insight into the jury's thinking, and we do not have to speculate that the jury used a lesser standard. The jury's question clearly shows that there is a reasonable likelihood that it used a lesser standard in convicting defendant. Because of this difference, we can follow the principles elucidated in *Turman* even if *Turman* were wrongly decided ***." *Id.* ¶ 37.

¶ 45                                    E. Application to This Case

¶ 46    In this case, the trial court initially provided no definition of reasonable doubt to the jury. Thus, it conformed to the dictate of *Speight* that courts should not attempt to provide such a definition. And, even when the jury asked for the "legal definition" of the term, the trial court simply responded that the definition was for the jurors to determine.

¶ 47    This response was unquestionably correct. As our supreme court has held, neither the court nor counsel should attempt to define reasonable doubt for the jury. *Speight*, 153 Ill. 2d at 374. As a practical matter, the refusal to supply a definition requires jurors to wrestle with the term's meaning themselves. This is no bad thing: the American legal system is premised on the belief that jurors represent the conscience of the community and will act diligently and thoughtfully in applying the law. Thus, absent any concrete demonstration of error or confusion, jurors should be trusted to apply the beyond a reasonable doubt standard appropriately. See *United States v. Glass*, 846 F.2d 386, 387 (7th Cir. 1988) (" 'Reasonable doubt' must speak for itself. Jurors know what is 'reasonable' and are quite familiar with the meaning of 'doubt.' "). A trial court's instruction that the meaning of "reasonable doubt" is for jurors to determine is a correct statement of Illinois law.

¶ 48    The defendant argues that a trial court's instruction telling jurors that they must define reasonable doubt inevitably encourages them to apply a standard that is less than proof beyond a reasonable doubt. However, he provides no explanation as to why this should be so, other than citing to *Turman* and *Franklin*. To the extent that *Turman* and *Franklin* held that simply instructing jurors that they must determine the meaning of "reasonable doubt" is (1) a violation of the Illinois Supreme Court's proscription against providing a definition or (2) reversible error *per se*, we find them unpersuasive. See *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008) (decisions of one district of the appellate court

are not binding on other districts). To the extent that those two cases rest on some other basis, such as the use of the word "collectively" in the instructions in those cases, they are distinguishable from this case. Either way, the defendant's reliance on these cases is unavailing.

¶ 49    Under *Victor*, we must consider all of the instructions received by the jury and determine whether there is a reasonable likelihood that the jury convicted the defendant under a lesser standard than proof beyond a reasonable doubt. Here, however, the defendant's sole contention of error is the wording of the trial court's response to the jury's second question. We have found that there was no error in this response. Absent any other evidence that the jury applied a lesser standard than proof beyond a reasonable doubt in convicting the defendant of count I, we cannot conclude that there is a reasonable likelihood that the defendant's due process rights were violated by the trial court's instructions to the jury. *Victor*, 511 U.S. at 6.

¶ 50    As we find no error in the trial court's instructions to the jury in this case, we likewise find no plain error. *Naylor*, 229 Ill. 2d at 593. Accordingly, the defendant's forfeiture must stand. *People v. Pastorino*, 91 Ill. 2d 178, 188 (1982) ("[p]lain error [doctrine] is a narrow and limited exception to the general waiver rule").

¶ 51                              CONCLUSION

¶ 52    The judgment of the circuit court of Du Page County is affirmed.

¶ 53    Affirmed.

¶ 54    JUSTICE HUDSON, specially concurring.

¶ 55    I agree with the majority that there is no reasonable likelihood that the jury applied an incorrect standard of proof in the present case. I write separately to caution trial courts against proceeding down a path that is fraught with peril. It is true that a "trial court has a duty to provide instruction to the jury where it has posed an explicit question or requested clarification on a point of law arising from facts about which there is doubt or confusion." *People v. Childs*, 159 Ill. 2d 217, 229 (1994). On the other hand, "[a] trial court may exercise its discretion and properly decline to answer a jury's inquiries where the instructions are readily understandable and sufficiently explain the relevant law, where further instructions would serve no useful purpose or would potentially mislead the jury." *Id*. at 228. As set forth by the majority, precedent of both the United States Supreme Court and our supreme court is abundantly clear–there is no need for a trial court to attempt to define "reasonable doubt" any further than the plain meaning of those two common words conveys. I believe that the better practice is to let the phrase speak for itself.

¶ 56    Indeed, even stating something as seemingly innocuous as "it is for you to decide" carries risks. Such an instruction could be read as directing a jury that it must try to define or interpret the objective meaning of the term. On the other hand, it could be read as vesting a jury with the discretion to interpret the term to mean whatever it wants it to mean (like 80%, 70%, or 60% certitude, as the question was posed by the jury in *Downs*, 2014 IL App (2d) 121156). In short, any attempt to interpret, define, or even comment on the term "reasonable doubt" risks reversal.