# Illinois Official Reports

## Appellate Court

---

### *People v. Downs*, 2014 IL App (2d) 121156

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARK A. DOWNS, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-1156 |
| Filed | May 30, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction and sentence for first-degree murder were vacated and the cause was remanded for a new trial where the trial court committed plain error by responding to the jury's question as to the definition of "reasonable doubt" by replying that it was the jury's duty to define "reasonable doubt," since such an instruction to the jury was error, and in defendant's case, the evidence was so closely balanced that the error threatened to tip the balance against defendant, and the error was so serious that it affected the fairness of the trial and challenged the integrity of the judicial process. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 07-CF-2986; the Hon. Timothy Q. Sheldon, Judge, presiding. |
| Judgment | Vacated and remanded. |

Counsel on
Appeal

Thomas A. Lilien and Bruce Kirkham, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Joan M. Kripke, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices Hutchinson and Spence concurred in the judgment and opinion.

## OPINION

¶ 1    This case was last before us on an appeal from the dismissal, during the first stage of a *Krankel* hearing (see *People v. Krankel*, 102 Ill. 2d 181 (1984)), of posttrial claims of ineffective assistance of counsel. *People v. Downs*, 2012 IL App (2d) 100755-U (*Downs I*). In *Downs I*, we reversed the dismissal, because the preliminary inquiry in the *Krankel* hearing was erroneously converted into an adversarial hearing on the merits and defendant, Mark A. Downs, was required to represent himself. As the circuit court of Kane County had acknowledged during the hearing that some of defendant's allegations indicated possible neglect, we remanded the case with directions to appoint counsel and continue the case from that point. *Id.* ¶¶ 50-51. The trial court complied with our directive and appointed counsel, held a *Krankel* hearing, and denied defendant's motion for a new trial. Defendant appeals, arguing again that his counsel was ineffective. Defendant also argues, for the first time in this matter, that the trial court committed plain error by erroneously defining "reasonable doubt" for the jury in response to the jury's question. Despite the procedural irregularity in raising the reasonable-doubt issue, we agree and reverse.

¶ 2                                    I. BACKGROUND
¶ 3    In *Downs I*, we provided a full summary of the events underlying that appeal, and we need not repeat it; rather, we will summarize the events pertinent to the issues raised in this appeal. In April 2009, following a jury trial, defendant was convicted of the first-degree murder of Nico Contreras. At trial, defendant was represented by the Kane County public defender, David Kliment. The State's primary witness was Ruben Davila, a gang member who defected from the Latin Home Boys in Aurora to their rivals, the Almighty Ambrose gang. Davila was testifying pursuant to a favorable plea agreement under which he would not be charged in the Contreras murder and would plead guilty to a reduced charge in an unrelated murder. Davila testified that he and defendant went to the home of Robert Saltijeral (who was a member of Davila's previous gang) and that defendant shot through the outside wall and windows into a

room in which they believed Saltijeral was sleeping. As it turned out, Saltijeral had moved from the residence or at least was not sleeping there. Instead of Saltijeral, the unfortunate Contreras occupied the room and was shot dead as he slept.

¶ 4    As the jury deliberated on the evidence elicited during the trial, they submitted five questions or requests to the trial court. Pertinently, in one question, the jury asked, "What is your definition of reasonable doubt[:] 80%[,] 70%[, or] 60%?" Following a brief consultation with the State and defendant, the trial court responded, "We cannot give you a definition [of reasonable doubt;] it is your duty to define [it]." The jury returned a guilty verdict.

¶ 5    After the verdict but before sentencing, defendant filed two *pro se* motions alleging that Kliment had provided ineffective assistance. In defendant's second motion, defendant incorporated the allegations from the first motion. The second motion was 60 pages long and contained 34 allegations of ineffectiveness. On July 31, 2009, the trial court appointed Ronald Haskell to represent defendant. On October 27, 2009, Haskell filed a second amended motion alleging Kliment's ineffectiveness. The motion adopted five of the claims that defendant raised in his *pro se* motions. On November 25, 2009, defendant filed an additional *pro se* motion raising 13 more claims of ineffectiveness.

¶ 6    Among the five claims adopted by Haskell was the allegation that defendant told Kliment, on both the first and the second day of the jury trial, that he wanted to dismiss the jury and proceed with a bench trial. Kliment explained, during the faulty preliminary inquiry hearing, that he acknowledged defendant's requests those days but tried to talk defendant out of dismissing the jury, because, in Kliment's estimation, it would be a very bad move given that following a bench trial the trial court had previously found codefendant Elias Diaz guilty of first-degree murder. Kliment averred that defendant was never "insistent" about dismissing the jury and proceeding with a bench trial; defendant, by contrast, stated that he told Kliment that he was "almost 100 percent certain" that he wanted to waive the jury and proceed with a bench trial.

¶ 7    Haskell also adopted the claim that Kliment failed to sufficiently investigate and present defendant's alibi defense. Defendant claimed that he was at work and working at the time of the murder. Kliment explained that he contacted defendant's then-employer, but that the employer did not retain employment records going that far back in time. Defendant argued that Kliment should have called defendant's sister and brother to offer testimony about his alibi. Both defendant's sister and brother provided written statements supporting defendant's alibi. Defendant's sister wrote that both her brothers lived with her at the time of the murder and that she recalled driving them to work for seasonal positions at Borg-Warner in West Chicago. According to the sister, their shifts began at 6 p.m. and ended at 6 a.m., extending through the night of the murder.

¶ 8    Although the trial court had already appointed an attorney to represent defendant, the trial court took another look at how it wanted to proceed. The trial court determined that it had not held a proper preliminary inquiry before appointing counsel and, even though counsel was ready to proceed on the amended motion that adopted several of defendant's claims, the trial court rescinded Haskell's appointment and conducted three days of hearings. Defendant presented each of his *pro se* ineffective-assistance claims and the trial court permitted both Kliment and the State to comment on each of the allegations or to answer questions posed by the trial court. After defendant finished presenting all of his claims, the trial court addressed each claim individually and determined that there was no basis to believe that Kliment had

provided ineffective assistance. It thus ruled that there was no basis to appoint counsel to represent defendant on any of the claims. Defendant's claims, then, were effectively denied.

¶ 9 Defendant appealed and we held that the trial court had conducted an improper *Krankel* hearing by allowing the State and Kliment to participate and turning the preliminary inquiry into an adversarial hearing on the merits. See generally *Downs I*, 2012 IL App (2d) 100755-U. Based on this conclusion, we remanded the cause and directed the trial court to appoint an attorney to represent defendant on his claims of ineffective assistance. *Id.* ¶ 51. Because we were remanding for further proceedings on defendant's ineffective-assistance claims, we declined to consider the merits of defendant's contentions, specifically the claims regarding a mid-trial jury waiver and defendant's alibi defense. *Id.* ¶ 52.

¶ 10 Upon remand to the trial court, Haskell was once again appointed to represent defendant. On October 3, 2012, Haskell filed a third amended motion, declining to adopt four of the five claims that he had originally adopted. Haskell's motion raised only a general charge of ineffective assistance, and this claim did not allege any specific acts by Kliment that constituted deficient representation. Similarly, the claim did not allege any specific instance or type of prejudice. In the motion, Haskell noted that he was "disposed to decline to adopt" defendant's *pro se* allegations but that he nevertheless advanced the single, general claim because "the best judgment of trial counsel's overall performance lies with the [trial court] which had the ability to observe counsel throughout the trial."

¶ 11 Specifically, Haskell averred in the October 2012 third amended motion that he reviewed the transcripts of the earlier faulty, *Krankel* hearing in making the determination to decline to adopt or raise any substantive and specific claims on defendant's behalf. Haskell explained, in the motion:

> "[T]he information provided by all participants during the hearings became an invaluable resource for this counsel's investigation in preparing the instant motion. Although not sworn, the statements made were offered in open court and thus *Krankel* counsel found them to be reliable with respect to determinations made in the context of this motion."

Haskell further explained that his investigation into defendant's claims was modeled on the procedures employed for postconviction petitions. Haskell averred that, consistent with Illinois Supreme Court Rule 651(c) (eff. Apr. 26, 2012), he "consulted sufficiently with Defendant to ascertain his allegations of ineffectiveness," he reviewed the *pro se* pleadings and trial transcripts, and he reviewed the transcripts from the initial *Krankel* hearing.

¶ 12 Before the trial court, however, defendant contradicted Haskell's averments. Defendant stated that Haskell never spoke with him about any substantive issues before filing the third amended motion. Haskell then explained to the trial court that, when he had averred that he "consulted sufficiently with Defendant to ascertain his allegations of ineffectiveness," he meant that he reviewed the transcripts of the earlier *Krankel* hearing, relying particularly on defendant's *pro se* presentation of his claims during that faulty preliminary inquiry. Haskell related that, based on defendant's and Kliment's statements during the faulty preliminary inquiry, he determined not to adopt defendant's specific claims of ineffective assistance.

¶ 13 The trial court entertained arguments on the motion and then held that the motion did not support a claim of ineffective assistance because it did not allege either specific acts of deficient performance or specific examples of prejudice. The trial court denied the motion. Defendant timely appeals.

¶ 14                                    II. ANALYSIS

¶ 15        On appeal, defendant raises two issues. First, for the first time in any of these proceedings, either in the trial court or in the appellate court, defendant argues that the trial court committed plain error in instructing the jury in response to its question concerning the definition of reasonable doubt. Second, defendant argues that Haskell provided ineffective assistance by essentially abdicating his role as counsel and refraining from presenting any of defendant's potentially meritorious claims. We begin with defendant's claim of plain error.

¶ 16                       A. Plain Error and Reasonable Doubt

¶ 17        Defendant first argues that the trial court erred in its response to the jury as to the definition of reasonable doubt. During deliberations, the jury sent several questions to the trial court. Pertinently, the jury asked, "What is your definition of reasonable doubt[:] 80%[,] 70%[, or] 60%?" After receiving the question, the trial court gathered the parties, and the following colloquy occurred:

> "THE COURT: All right. We're present in court, outside the presence of the jury, and Mr. Downs is present.
>
> And the jury has another question. I believe you will enjoy this: What is your definition of reasonable doubt, 80%, 70%, 60%?
>
> MR. KLIMENT: Can I answer that?
>
> THE COURT: Actually, don't they have it in the instructions, where they say the committee recommends no instruction on reasonable doubt?
>
> MR. KLIMENT: That's absolutely true. We can't give them a definition of reasonable doubt. We are one of the few states that can't.
>
> MR. STAJDOHAR [prosecutor]: What if we only answer: It's yours to define.
>
> THE COURT: We cannot give you a definition, it's yours to define.
>
> MR. STAJDOHAR: That is for you as a jury to define.
>
> THE COURT: Okay. You may go back."

The trial court's written reply stated, "We cannot give you a definition it is your duty to define."

¶ 18        Defendant argues that, by telling the jury that it had a duty to define reasonable doubt, the trial court ran afoul of the prohibition in Illinois against defining reasonable doubt for a jury. Defendant contends that, as a result of the court's response, there is a reasonable likelihood that the jury used a lesser standard to convict him and that this represents reversible error. Before addressing the merits of defendant's contention, we must first address whether and how we can review this argument.

¶ 19        Defendant acknowledges that he did not raise this issue in the trial court or during the initial appeal. The State argues that defendant's failure to raise the issue before the second appeal to this court constitutes waiver or forfeiture and that we should not consider the issue. Defendant argues that we may consider the issue under the plain-error doctrine. We therefore turn our attention to the requirements of the plain-error doctrine.

¶ 20        The plain-error doctrine provides that a forfeited claim may be reviewed under two circumstances: (1) when a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant,

regardless of the seriousness of the error; or (2) when a clear or obvious error occurred and that error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the strength of the evidence. *People v. Johnson*, 238 Ill. 2d 478, 484 (2010). "Clear" or "obvious" in the context of the plain-error doctrine means that the law is well settled at the time of trial; if the law was unclear at the time of the trial, but becomes clear (*i.e.*, settled) during the appeal, then the error is not "plain" for purposes of the plain-error doctrine. *In re M.W.*, 232 Ill. 2d 408, 431 (2009) (citing *People v. Piatkowski*, 225 Ill. 2d 551, 565 n.2 (2007), citing *United States v. Olano*, 507 U.S. 725, 734 (1993)). The purpose of the plain-error doctrine is to ensure that a defendant receives a fair trial, but a defendant is not guaranteed a perfect trial. *Johnson*, 238 Ill. 2d at 484. It is not intended to be a general saving clause, but rather it is construed as a narrow and limited exception to the forfeiture rule applicable to unpreserved claims of error. *Id.*

¶ 21 When seeking review under the plain-error doctrine, a defendant carries the burden of persuasion to show that the forfeiture should be excused. *Id.* at 485. If the defendant fails to meet his or her burden of persuasion, the procedural default will be honored, and the issue will be deemed forfeited. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). The first step in considering a defendant's invitation to review a forfeited issue under the plain-error doctrine is to determine whether an error occurred. *Id.* We thus turn to whether defendant's claim constitutes error.

¶ 22 It is well established in Illinois that the term "reasonable doubt" is self-defining and does not need any further defining in court instructions. See, *e.g.*, *People v. Speight*, 153 Ill. 2d 365, 374 (1992) (neither the trial court nor counsel should try to define "reasonable doubt" for the jury); *People v. Cagle*, 41 Ill. 2d 528, 536 (1969) ("reasonable doubt" needs no definition); *People v. Malmenato*, 14 Ill. 2d 52, 61 (1958) ("reasonable doubt" needs no elaboration; attempting to more specifically define it is futile). Further, the Illinois Pattern Jury Instructions recommend that no instruction be given defining the term "reasonable doubt." Illinois Pattern Jury Instructions, Criminal, No. 2.05, Committee Note, at 78 (4th ed. 2000). Based on this authority, we believe that it is abundantly clear that giving an erroneous definition of "reasonable doubt" qualifies as error. The next question we must address is whether the trial court's response to the jury's question was such an erroneous definition.

¶ 23 Two recent cases have held that an instruction similar to "it is your [the jury's] duty to define" the term "reasonable doubt" is erroneous. In *People v. Turman*, 2011 IL App (1st) 091019, ¶ 19, the jurors had been deliberating for a time when they asked for a " 'more explicit, expansive definition of reasonable doubt.' " The trial court ultimately answered the question with the reply, " 'It is for the jury to collectively determine what reasonable doubt is.' " *Id.* (Interestingly, the defendant did not object at trial or include this issue in his posttrial motion, resulting in a procedural default; the appellate court conducted a plain-error analysis. *Id.* ¶¶ 19-27.)

¶ 24 The appellate court held that the trial court's instruction to the jury on reasonable doubt constituted error. *Id.* ¶ 25. The court reasoned that, by instructing the jurors that they should collectively determine what reasonable doubt was, it was likely that the jury used a standard that was actually below the reasonable doubt standard. *Id.* According to the court, a circular definition would have been better (*e.g.*, "reasonable doubt" is not any doubt, but only that doubt which is reasonable), and forgoing a definition altogether would have been best of all.

*Id.* (The court then proceeded to hold that the error satisfied both elements of the plain-error doctrine. *Id.* ¶ 27.)

¶ 25    Similarly, in *People v. Franklin*, 2012 IL App (3d) 100618, ¶ 4, during *voir dire*, the trial court defined "reasonable doubt" to be " 'what each of you individually and collectively, as 12 of you, believe is beyond a reasonable doubt.' " The defendant argued that the erroneous reasonable-doubt instruction was compounded when the State referred to it in its closing argument. *Id.* ¶ 20. (Once again, the defendant did not preserve the error, and the appellate court proceeded under the plain-error doctrine. *Id.* ¶ 22.)

¶ 26    In analyzing whether the reasonable-doubt instruction constituted error, the court noted the prohibition in Illinois against defining the term and held that the trial court's instruction contravened that prohibition. *Id.* ¶ 27. In addition, the court reasoned that, "by telling [the] jurors that it was for them to collectively determine what reasonable doubt meant, there [was] a reasonable likelihood that the jurors understood the instruction to allow a conviction based on proof less than [beyond] a reasonable doubt." *Id.* ¶ 28. (The court then determined that the erroneous reasonable-doubt instruction constituted structural error (*id.* ¶ 23) and thus was cognizable as plain error (*id.* ¶ 28).)

¶ 27    *Turman* and *Franklin* focus on (1) the improper instruction that the jury is to collectively determine the meaning of reasonable doubt, and (2) the danger that the jury will convict a defendant on proof that did not meet the reasonable-doubt standard. Both of those concerns are squarely implicated in this case. First, the trial court instructed the jury: "We cannot give you a definition [of reasonable doubt;] it is your duty to define [reasonable doubt]." We are unable to construe the trial court's instruction as meaning anything but that the jury, collectively, was to define reasonable doubt. See *Turman*, 2011 IL App (1st) 091019, ¶ 25; *Franklin*, 2012 IL App (3d) 100618, ¶ 28.

¶ 28    Second, the danger that the jury might have used a standard less than reasonable doubt is manifest. In both *Turman* and *Franklin*, the danger arose from the instruction itself requiring the jurors to collectively define reasonable doubt. *Turman*, 2011 IL App (1st) 091019, ¶ 25; *Franklin*, 2012 IL App (3d) 100618, ¶ 28. That same concern is present here. As noted, there is no plausible interpretation of the trial court's written instruction other than as a command to define the term according to the jury's collective decision. But in this case, we can take a further step, confirming the likelihood that the jury used a lesser standard. In its question about the meaning of reasonable doubt, the jury sought to quantify it in terms of percentages (which, we note, were disturbingly low). This question proves that the jury was considering the concept of "beyond a reasonable doubt" to be a level of confidence in the evidence somewhere between 60% and 80%. The question, at best, suggests that the jury was predisposed to use a standard less than reasonable doubt, and the trial court, by telling the jury that the court would stay out of it and let the jury do whatever it wanted, only compounded the error.[1] We further note that the reasonable-doubt question was the second question the jury submitted to the trial

---

[1] For what it might be worth, the jury's question put the trial court into a real bind; the only acceptable answer that we can think of would have been to tell the jury that reasonable doubt is not defined as a percentage, but rather is the highest standard of proof known in law, and that the jury had all of the instructions needed to answer its question. At oral argument, however, both defendant and the State expressed that to tell the jury that reasonable doubt is not defined as a percentage would have strayed into providing a definition of reasonable doubt and would have constituted error.

court; the jury also asked whether it could have the transcripts of three witnesses' testimony, and the trial court answered that it could but cautioned that preparation would take several hours. The jury then delivered its verdict before the transcripts were ready. This circumstance further suggests that, rather than wait the necessary few hours, the jury based its verdict on one of the fairly low percentages that it imagined to constitute the necessary standard. Thus, the jury's questions and the timing of its verdict bolster our conclusion that there is a reasonable likelihood (in fact, we believe it to be a substantial likelihood) that the jury convicted defendant by a standard less than beyond a reasonable doubt. Accordingly, we believe that defendant has fully carried his burden of persuasion and demonstrated that an error occurred. We must therefore continue along the path of plain error.

¶ 29    Once an error has been demonstrated, the defendant must show that one (or both) of the two elements of the plain-error analysis are satisfied. As noted, under the plain-error doctrine, a reviewing court may consider a forfeited claim when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the balance against the defendant, regardless of the seriousness of the error; or (2) a clear or obvious error occurred and that error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the strength of the evidence. *Johnson*, 238 Ill. 2d at 484. Defendant argues that the error in this case may be reviewed under either prong of the plain-error analysis.

¶ 30    Defendant was convicted due to the testimony of Davila, a former gang member who had been turned and convinced to testify against his former associates. Davila was extensively impeached by his criminal history and his motivation to curry favor with the State by fulfilling his agreement to testify. While the evidence presented in this case was sufficient to prove defendant's guilt beyond a reasonable doubt, we do not believe that it was overwhelmingly in favor of the State. In any event, we do not have to provide a definitive answer on the closely-balanced prong, because an erroneous reasonable-doubt instruction has long been held to constitute structural error and to satisfy the second prong of the plain-error analysis.

¶ 31    The second prong of the plain-error analysis is equated with structural error. *People v. Thompson*, 238 Ill. 2d 598, 613-14 (2010). Structural error is a systemic error that erodes the integrity of the judicial process and undermines the fairness of the defendant's trial, and such error requires an automatic reversal. *Id.* The concept of structural error is fairly tightly circumscribed, having been recognized only in a limited number of cases: where there is a complete denial of counsel, where there is a trial before a biased judge, where there is racial discrimination in the selection of a grand jury, where there is a denial of self-representation at trial, where there is a denial of a public trial, and where there is a defective reasonable-doubt instruction. *Id.* at 609. Both *Turman*, 2011 IL App (1st) 091019, ¶ 27, and *Franklin*, 2012 IL App (3d) 100618, ¶ 28, determined that the defective reasonable-doubt instruction amounted to structural error. So too here. The trial court's written instruction to the jury squarely raised the two concerns motivating the holdings in *Turman* and *Franklin*: that the trial court told the jury to collectively define the term "reasonable doubt," and that the jury would likely use a standard less than reasonable doubt to convict the defendant. Accordingly, we hold that the defective reasonable-doubt instruction here amounted to structural error and requires reversal. See *Thompson*, 238 Ill. 2d at 613-14 (automatic reversal is required where there is structural error).

¶ 32    The State is not without weighty arguments on its side. The weightiest is that defendant waived or forfeited (in any event, procedurally defaulted) his claim that the trial court erroneously instructed the jury regarding reasonable doubt. This is a definite problem. Defendant did not raise the issue in the trial court, did not raise the issue in a posttrial motion (even the one first drafted by Haskell adopting five of defendant's contentions of ineffective assistance), did not raise the issue on appeal to this court in *Downs I*, did not raise the issue on remand in the trial court, and raises it for the first time only in his second appeal to this court. The State does not, however, cite pertinent authority that would suggest that the issue would not be susceptible to a plain-error analysis. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) (failure to cite authority in support of appellate argument waives or forfeits the contention on appeal). In fact, we note that, if defendant did not raise a plain-error issue now, he would indeed forfeit the ability to raise the instruction error in a postconviction petition. *People v. Coady*, 156 Ill. 2d 531, 538 (1993) (in postconviction proceedings the plain-error doctrine does not operate to save claims that were forfeited by the defendant in the underlying prosecution). Notwithstanding the State's lapse, we note that we are empowered, under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), to make any ruling that the case requires. The State does not suggest how ignoring the structural defect of the erroneous reasonable-doubt instruction would accomplish justice in this case; in other words, the State does not provide a reason why we should sanction a result in which there was a substantial likelihood that defendant was convicted by proof that was less than beyond a reasonable doubt. For these reasons, while the State's procedural-default contention has surface appeal, it is ultimately untenable, and we reject it.

¶ 33    Next, the State argues that we should not review this claim under the plain-error doctrine. The State appears to try to argue that the trial court's instruction did not constitute error and so we cannot go on to consider whether it fulfills either prong of the plain-error analysis. We quote the State's argument in its entirety:

"There are two steps in plain error review under Rule 615(a) to determine if error occurred.

'An unpreserved error will not be "noticed" under Rule 615(a) unless it is "clear or obvious." [*People v. Piatkowski*, 225 Ill. 2d 551, 565 n.2 (2007) (the term "plain" as used in the plain-error rule is synonymous with "clear" or "obvious"; error is not plain if the law was "unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified") (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)).]

If such an error is found, a reviewing court will grant relief in either of two circumstances: (1) if "the evidence [is] so closely balanced that the error alone threatened to tip the scales of justice against the defendant," or (2) if the error is "so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *In re M.W.*, 232 Ill. 2d 408, 431 (2009).'

At the time of the trial, the law defining 'reasonable doubt' for a jury was 'clear or obvious.' *Piatkowski*, 225 Ill. 2d at 565 n.2. Since the law was clear, it is not a basis for this Court to review defendant's argument. Therefore, the first step of plain error review has been met and defendant's argument does not qualify for review under it. *In re M.W.*, 232 Ill. 2d at 431."

¶ 34    We are not sure whether the State has inadvertently added or dropped a "not" from its analysis. As best we can parse the argument,[2] the State appears to argue that defendant has not passed the first step of plain-error analysis because the law was clear when the trial took place; however, the authority quoted by the State sets forth a different rule: if the law under which error is claimed is settled, as opposed to being in conflict or unsettled, then the error is "clear" or "obvious" as those terms are used in the explanation of the plain-error doctrine. If the law is clear or obvious, then it may be noticed under the plain-error doctrine. *In re M.W.*, 232 Ill. 2d at 431. But the State then argues, based on *In re M.W.*, that, "[because] the law was clear, it is not a basis for this Court to review defendant's argument." This conclusion does not follow from the predicate, and, in fact, it conflicts with the quoted authority. In any event, the first step of plain-error analysis is to determine if an error was committed. *Hillier*, 237 Ill. 2d at 545. We have determined the existence of an error by following *Turman* and *Franklin* along with other cases setting their groundwork. The State fails to convince us that the first step of plain-error analysis has not been fulfilled, or even that its argument is "logically coherent."

¶ 35    Next the State argues that *Turman* and *Franklin* were wrongly decided and that we should not follow them. Regarding *Turman*, the State focuses on the passage in which the appellate court expressed concern that the trial court "allowed the jury to use a standard that in all likelihood was below the threshold of a reasonable doubt standard." *Turman*, 2011 IL App (1st) 091019, ¶ 25.[3] The State argues that here the trial court's response did not allow the jury to use a standard that fell below the reasonable-doubt standard, because the trial court prefaced the response with the phrase, "[w]e cannot give you a definition [of reasonable doubt]." The State notes that *Turman* suggested that forgoing a definition would have been the best course (*id.*), and cites to several cases that iterated the rule that neither the trial court nor counsel should define reasonable doubt for the jury. See *People v. Failor*, 271 Ill. App. 3d 968, 970 (1995) (and cases cited therein). The State then reasons that the jurors are neither the court nor counsel, so they are free to define reasonable doubt. There are at least two flaws in the State's reasoning.

¶ 36    First, the prohibition against the court or counsel defining reasonable doubt for the jury is concerned with potentially misleading the jury. *Speight*, 153 Ill. 2d at 374; *Turman*, 2011 IL App (1st) 091019, ¶ 25; *Franklin*, 2012 IL App (3d) 100618, ¶¶ 26, 28. It is precisely because the jury was told to define reasonable doubt for itself, leading to the likelihood that the jury used a lesser standard to convict the defendant, that *Turman* and *Franklin* found that it was error to exhort the jury to make up its own definition of reasonable doubt. *Turman*, 2011 IL App (1st) 091019, ¶ 25; *Franklin*, 2012 IL App (3d) 100618, ¶¶ 26, 28. However, the State argues that giving the jury free rein to make up its own definition of reasonable doubt is not error. This argument is contradicted by well-settled and long-standing authority (*e.g.*, *Speight*, 153 Ill. 2d at 374) and the express reasoning of *Turman*, 2011 IL App (1st) 091019, ¶ 25, and *Franklin*, 2012 IL App (3d) 100618, ¶¶ 26, 28.

¶ 37    The second, and perhaps more important, flaw in the State's reasoning is that the jury's question regarding reasonable doubt gives us a concrete and undeniable view into the jury's

_____

[2]Defendant wryly notes that "the State's argument may not be logically coherent." To say the least.

[3]The State reiterates its argument that defendant procedurally defaulted our review of the reasonable doubt issue. We have already dealt with this issue and need not address it again.

thought process regarding reasonable doubt. By asking if reasonable doubt was 80%, 70%, or 60%, the jury clearly showed that it was already contemplating a standard less than the reasonable-doubt standard required under the law. By instructing the jury that it was "your duty to define [the term 'reasonable doubt,'] " the trial court gave the jury clear license to continue down its mistaken pathway of equating reasonable doubt to some percentage of confidence. The State claims that *Turman* was based on speculation. Even if it were, here we do not have that speculation, because the jury's question provides insight into the jury's thinking, and we do not have to speculate that the jury used a lesser standard. The jury's question clearly shows that there is a reasonable likelihood that it used a lesser standard in convicting defendant. Because of this difference, we can follow the principles elucidated in *Turman* even if *Turman* were wrongly decided due to speculation as to what the jury might have done.

¶ 38    The State makes essentially the same argument as to why we should not follow *Franklin*. The same two flaws in its reasoning discussed above persist in its argument regarding *Franklin*. As a result, we also reject this argument.

¶ 39    Because the jury's question shows that it was already considering reasonable doubt to be some standard less than that required under the law, and because the primary principle motivating the reasonable-doubt cases is that the jury must not use a lesser standard in determining a defendant's guilt, we reject the State's arguments regarding *Turman* and *Franklin*. Because the State has failed to convince us not to follow the principles underlying *Turman* and *Franklin*, we maintain our conclusion that the trial court's reasonable-doubt instruction was error because the jury likely used a standard less than reasonable doubt to return its guilty verdict. Similarly, the State has offered nothing to change our conclusion that this error represented structural error requiring reversal.[4] Accordingly, we hold that defendant has demonstrated the existence of a plain error that satisfies the second prong of the plain-error analysis.

¶ 40    The State next argues that defendant's contentions under the first prong fail. In sum, the State argues that the evidence was not closely balanced, because the witnesses challenging Davila's credibility were themselves not credible. We need not fully consider the issue, as we have determined that defendant has carried his burden of persuasion on the second prong. However, we note that the State's argument does not address the substantial infirmities that Davila himself brought to the table and the fact that his credibility was key to the State's case. The fact that the jury might have found Davila credible does not translate into an overwhelming case in the State's favor. Rather, the case was essentially "he said, they said," and there was little objective evidence corroborating Davila's testimony. Thus, we do not think that the evidence rose beyond closely balanced. That said, again, because defendant firmly prevails on the second prong, we need not further consider the first prong.

¶ 41                                    B. Ineffective Assistance

---

[4]At oral argument, the State attempted to summarize its argument regarding structural error. The State asserted that, as a result of the case's procedural posture, namely, a return appeal from a limited remand, the error cannot constitute structural error. While that might have been the intended point behind the State's written argument, we remain unsure of the point's coherence and, in any event, we remain unpersuaded.

¶ 42    Defendant's remaining claim on appeal is the very narrow claim that Haskell provided ineffective assistance concerning defendant's *pro se* claims of ineffective assistance at trial. Our determination on the reasonable-doubt issue requires a new trial, where the alleged ineffective assistance from the first trial will be unlikely to recur. Thus, we need not address this issue.

¶ 43                                    III. CONCLUSION

¶ 44    For the foregoing reasons, we reject the State's arguments and find plain error arising from the deficient reasonable-doubt instruction. Accordingly, we vacate defendant's conviction and sentence and remand the matter for a new trial.

¶ 45    Vacated and remanded.