2024 IL App (2d) 240026-U
No. 2-24-0026
Order filed April 9, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Nos. 23-CF-1167 23-DT-569 |
| MAX P. MCNAMARA, | ) ) | Honorable Michael J. Chmiel, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Presiding Justice McLaren and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not err in granting the State's petition to deny pretrial release and ordering defendant detained.

¶ 2                            I. INTRODUCTION

¶ 3    Defendant, Max P. McNamara, appeals an order of the circuit court of McHenry County granting the State's petition to deny pretrial release and ordering him detained pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)). See

Pub. Acts 101-652, § 10-255 (eff. Jan. 1, 2023) and 102-1104, § 70 (eff. Jan. 1, 2023) (we will refer to these public acts collectively as the "Acts").[1] For the reasons that follow, we affirm.

¶ 4                                    II. BACKGROUND

¶ 5     On December 14, 2023, defendant was charged by complaint with two counts of aggravated DUI (accident causing death) (625 ILCS 5/11-501(d)(1)(F) (West 2022)), a class 2 felony, in McHenry County case No. 23-CF-1167. On December 15, 2023, the State filed a verified petition to deny defendant pretrial release pursuant to section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)).

¶ 6     On December 18, 2023, the trial court conducted a hearing on the State's petition. The State proffered as follows. On October 1, 2023, at approximately 1:52 a.m., defendant was driving eastbound when he drove his truck into the westbound lane of traffic, striking two of three vehicles in a line of cars. All three vehicles were driven by members of a family leaving a wedding. When defendant drove into the westbound lane, he missed the first car in the line, sideswiped the second, and collided head-on with the third car. The driver of the second vehicle, Jelena Magazin, provided a written statement to McHenry County Sheriff's deputies stating that she saw headlights traveling towards her and that the collision caused her car to spin out on the roadway. She suffered minor injuries. Records obtained from defendant's vehicle showed that five seconds prior to striking Magazin's vehicle, defendant did not attempt to break. Rather, defendant's vehicle accelerated.

---

[1]Public Act 101-652 (eff. Jan. 1, 2023), which amended article 110 of the Code, has been referred to as the "Pretrial Fairness Act" and the Safety, Accountability, Fairness, and Equity-Today (SAFE-T) Act. However, neither title is official. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

The driver of the third vehicle, Dejan Kuljanin, died at the scene. According to the doctor who performed Kuljanin's autopsy, Kuljanin died solely as a result of blunt force trauma to his chest and abdomen. A toxicology report indicated that at the time Kuljanin died, he had no alcohol or drugs in his blood or urine.

¶ 7   Defendant suffered injuries from the accident and was taken to a hospital. Over an hour after the accident, defendant's blood was drawn by hospital staff. At that time, defendant's blood alcohol serum was 0.26, equating to a blood alcohol concentration of 0.22. The State proffered that testing at the hospital revealed that defendant was "presumptively positive for cocaine and amphetamines."

¶ 8   The State also proffered photographs taken from the scene of the accident as well as defendant's criminal history, which consisted of a charge for driving while his license was suspended or revoked in 2013 and a conviction of DUI from 2017.

¶ 9   The State then presented Kuljanin's mother to address the court. Kuljanin's mother stated that in the two and a half months between the accident and the hearing, her family felt "pain and suffering and anger" knowing that defendant was able to be at home with his family, when she had lost her son. She emphasized the pain of the loss and stated that her family had suffered psychological consequences, as "every time [they] stepped out, [they] would be haunted by the fear of running into the man who took [their] son away."

¶ 10   Counsel for defendant stated that defendant is married and works for his family's business. Defendant began attending church online a few weeks before the hearing and planned to begin attending in person. On October 31, 2023, defendant obtained an alcohol evaluation which returned "significant risk." Following the evaluation, he completed six hours of DUI risk education

and six classes of counseling. Counsel for defendant stated that defendant's family was very supportive and would drive him to work.

¶ 11    Following the hearing, the trial court granted the State's petition. At the outset, the trial court asked the State why, if the accident had occurred in October, the State waited until December to file a petition to deny pretrial release. The State responded that although defendant had been charged with a misdemeanor DUI initially (in McHenry County case No. 23-DT-569), it needed to conduct further investigations before charging the aggravated DUI counts in case No. 23-CF-1167. Because the State could not file a petition on a misdemeanor DUI (see 725 ILCS 5/110-6.1(a) (West 2022)), it filed the petition at issue one day after charging the aggravated DUI.

¶ 12    Turning to the petition, the court indicated that it agreed with the State. First, the court noted that the statement it received from Kuljanin's mother highlighted "an important element, that if there is an issue here *** it might be beyond somebody's control." Additionally, it found that the State had demonstrated by clear and convincing evidence that defendant posed a real and present threat to the safety of the community. Based on this, the trial court felt "swayed" that a similar accident could happen again and that no conditions could mitigate this threat. In a written order for detention, the trial court stated its finding that "There is no reasonable condition that can prevent the defendant from consuming drugs or alcohol and from risking being involved in another accident causing serious injury or death." The order stated that this was based on the "entirety of the record and the file, including but not limited to, the statement of the victim's mother, the presented toxicology proffer, and the defendant's prior criminal history." Defendant timely appealed from this order and filed a memorandum in support of his appeal.

¶ 13                                    III. ANALYSIS

¶ 14     At the outset, we note that in his notice of appeal, defendant argues that: (1) he was not charged with an offense qualifying for denial or revocation of pretrial release; (2) the State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offenses charged; (3) the State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or the community; (4) the State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat; and (5) the court erred in its determination that no condition or combination of conditions would reasonably ensure the appearance of defendant for later hearings or prevent defendant from being charged with a subsequent felony or class A misdemeanor. However, in his memorandum, defendant only presents argument in support of the third and fourth issues. As such, the other issues are abandoned. See *People v. Rollins*, 2024 IL App (2d) 230372, ¶ 22 (finding defendant abandoned those Rule 604(h) claims raised in the notice of appeal but not addressed in the memorandum). In his memorandum, defendant additionally requests that we review the trial court's order for plain error, arguing that the State's petition was untimely. We review each of the arguments in turn.

¶ 15     We apply a two-part standard of review to a trial court's decision to detain a defendant. We apply the manifest-weight-of-the-evidence standard to the trial court's factual determinations, including whether the proof is evident or the presumption great that a defendant has committed a qualifying offense, whether a defendant poses a threat, and whether any conditions would mitigate that threat. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. A finding is contrary to the manifest weight of the evidence only if a conclusion opposite to the trial court's is clearly apparent. *In re Jose A.*, 2018 IL App (2d) 180170, ¶ 17. The ultimate decision of whether a defendant should be

detained is reviewed for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. An abuse of discretion occurs only if no reasonable person could agree with the trial court. *People v. Williams*, 2022 IL App (2d) 200455, ¶ 52.

¶ 16                    A. Plain Error and Ineffective Assistance of Counsel

¶ 17    Defendant argues that because he was initially arrested and charged with a misdemeanor DUI on October 1, 2023, the State's petition for detention was untimely, as it was filed more than 21 days after defendant's initial appearance in court. We disagree.

¶ 18    When a defendant has failed to preserve an error for appeal, a reviewing court may review the issue for plain error. *People v. Bush*, 2023 IL 128747, ¶ 71; Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1970). Plain error review is appropriate when a clear or obvious error occurs and (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error" or (2) the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Bush*, 2023 IL 128747, ¶ 71. Under either prong of the plain-error doctrine, the first step is to determine whether a clear or obvious error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). "Plain-error review is reserved for errors that are clear or obvious based on law that 'is well settled at the time of trial[.]' " *People v. Williams*, 2015 IL App (2d) 130585, ¶ 11 (quoting *People v. Downs*, 2014 IL App (2d) 121156, ¶ 20).

¶ 19    Section 110-6.1(c) of the Code states that the State may file a petition to deny pretrial release "without prior notice to the defendant at the first appearance before a judge, or within the 21 calendar days *** after arrest and release of the defendant." 725 ILCS 5/110-6.1(c)(1) (West 2022). Defendant was charged with a non-detainable misdemeanor DUI following the incident on October 1, 2023, in case No. 23-DT-569. On December 14, 2023, a felony complaint was filed,

charging defendant with two counts of aggravated DUI in case No. 23-CF-1109. A warrant was issued that same day.

¶ 20    Aggravated DUI is detainable under section 110-6.1(a)(6.5)(E) of the Code. 725 ILCS 5/110-6.1(a)(6.5)(E) (West 2022). The State filed its petition to deny pretrial release in case No. 23-CF-1109 the next day, December 15, 2023. On that date, defendant first appeared in court on the charges in case No. 23-CF-1109, and the matter was continued for hearing on December 18, 2023. Defendant's argument that the State's petition ignores the fact that the misdemeanor citation was not detainable. Here, the State filed its verified petition the same day as defendant first appeared before the judge on his aggravated DUI charges. Accordingly, there was no error at all, much less plain or obvious error.

¶ 21                                    B. Threat

¶ 22    Defendant next argues that the trial court erred in concluding that the State proved by clear and convincing evidence that he poses a real and present threat to the safety of any person or persons in the community, based on the specific, articulable facts of the case. Defendant argues that the "record available to the Trial Court reflects that he has had no alcohol abuse or drug abuse issues, or medical issues, or psychiatric issues/ problems, and has never been involved in gang activity." He further argues that the State's evidence did not support a finding that he posed a real and present threat and that the trial court failed to consider a variety of statutorily delineated factors to determine "dangerousness."

¶ 23    In determining whether a defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, the trial court may consider, but is not limited to, factors such as: (1) the nature and circumstances of any offense charged; (2) the history and characteristics of the defendant; and (3) the identity of any

person or persons to whose safety the defendant is believed to a pose a threat, and the nature of the threat. 725 ILCS 5/110-6.1(g) (West 2022). No one factor is dispositive. See *id.*

¶ 24    Here, defendant was driving with a proffered blood alcohol concentration of 0.22, well over twice the legal limit, when he crashed into two vehicles, causing the death of one person, as well as injuring himself and two others. As the State articulated, it "is the randomness of this tragedy that makes defendant so dangerous." Although defendant argues that he "has not shown a propensity for driving while intoxicated resulting in tragedy," defendant's criminal history, with a DUI conviction from 2017 and an arrest for driving with a suspended or revoked license, demonstrates that defendant does have a history of driving while intoxicated and violating driving laws. Further, although defendant argues that the evidence does not reflect that he has a history of drug or alcohol abuse, he reported obtaining a drug and alcohol evaluation that was returned as "significant risk." Based on the foregoing, the trial court did not err in its determination that defendant posed a real and present threat to the safety of any persons or the community.

¶ 25                    C. Conditions of Release

¶ 26    Lastly, defendant contends that the trial court erred in finding that the State proved by clear and convincing evidence that there are no conditions that could mitigate the risk of his release. In support, defendant argues that: (1) the State failed to present any evidence that less restrictive conditions would mitigate the threat defendant posed and instead relied solely on the factual proffer that defendant committed an aggravated DUI; (2) the trial court relied too heavily on Kuljanin's mother's proffer; and (3) the trial court did not articulate why it found that no less restrictive conditions could mitigate the threat defendant posed.

¶ 27    With respect to conditions of release, section 110-6.1(e)(3) of the Code (725 ILCS 5/110-6.1(e)(3) (West 2022)) directs a court to consider the conditions set forth in section 110-10. (725

ILCS 5/110-10 (West 2022)). Section 110-10(a) requires all defendants released under the Act to appear for court dates, obey court orders, refrain from committing further offenses, and surrender all firearms. 725 ILCS 5/110-10(a) (West 2022). In addition, a court may impose additional conditions, including the supervision of Pretrial Services or a similar agency, and compliance with any other reasonable condition. 725 ILCS 5/110-10(b) (West 2022).

¶ 28    Turning to defendant's first argument, we agree with defendant that a factual proffer that defendant committed an offense is insufficient in itself to prove that there are no conditions that could mitigate the threat a defendant poses. See *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18. However, that is not the case here. Rather, the State proffered reasons why less restrictive conditions would not mitigate the threat posed by defendant. For example, the State indicated that SCRAM[2] monitoring would not fully mitigate the threat, as the State would be notified after the fact that defendant drank alcohol, whereafter the State would need to file a petition for sanctions and provide notice to defendant, a process which could take a week after the offense had already occurred.

¶ 29    Defendant further argues that the trial court was "overly deferential" to Kuljanin's mother, and "gave undue weight to the victim's mother's emotions," as her "emotional appeal to the Trial Court [was] not [a] statutorily delineated factor" that the trial court could use to determine dangerousness. Defendant does not provide more than conclusory statements to argue this point,

---

[2]SCRAM monitoring is the use of a transdermal monitoring device that detects the presence of alcohol in the wearer's sweat. *What Is The SCRAM CAM Bracelet And How Does It Work*, https://www.scramsystems.com/scramblog/what-is-scram-cam-bracelet-how-does-it-work/ (last visited April 3, 2024).

and based on our review of the record, we do not find merit to this argument. The trial court referenced the statement by Kuljanin's mother once before issuing its ruling. In the trial court's order, it referenced the statement, as well as factual proffers, toxicology reports, and photographic evidence as a basis for its ruling. That, without more, is not "undue weight."

¶ 30     Finally, defendant argues that the trial court did not articulate why defendant was unlikely to comply with conditions of release, and instead "arbitrarily decided that due to the seriousness of the offense no condition or combination of conditions could mitigate the real and present threat." However, at the conclusion of the hearing, the trial court stated that defendant has a criminal history with similar offenses. Based on those cases, the nature of the current case, defendant's toxicology reports, and other evidence such as defendant's alcohol assessment, the trial court noted its concern that a similar offense could occur again, in spite of the pretrial resources available. In its written order, the court indicated that it believed that there was no reasonable condition that could prevent defendant from drinking alcohol or consuming drugs or engaging in another similar DUI accident. Thus, the trial court did articulate why it believed no condition or combination of conditions could mitigate the threat defendant posed.

¶ 31     "[I]n reviewing the circuit court's ruling for an abuse of discretion, we will not substitute our judgment for that of the circuit court, 'merely because we would have balanced the appropriate factors differently.' [Citations.]" *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11. Here, a reasonable person could find based on the record before us that no less restrictive conditions were available to mitigate the threat defendant posed. Accordingly, the trial court did not abuse its discretion in ordering defendant detained pending trial.

¶ 32                                    IV. CONCLUSION

¶ 33     In light of the foregoing, we affirm the order of the circuit court of McHenry County.

¶ 34    Affirmed.