2024 IL App (2d) 240034-U
No. 2-24-0034
Order filed April 23, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22-CF-1517 |
| BYRON FRAZIER, | ) ) ) | Honorable John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice McLaren and Justice Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not commit plain error by burden shifting, failing to make findings, or misapplying mitigation standards.   Affirmed.

¶ 2    In this interlocutory appeal under Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023), defendant, Byron Frazier, timely appeals the order of the circuit court of Kane County granting the State's petition to detain him pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).[1]  See also Pub. Act 102-1104, § 70 (eff. Jan.

_____

[1]The Act is also commonly known as the Safety, Accountability, Fairness and Equity-

1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023).    For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On September 22, 2022, defendant was charged with attempt first degree murder (720 ILCS 5/9-1(a)(1) (West 2020)), armed violence (*id.* § 33A-2(a)), armed habitual criminal (*id.* § 24-1.7(a)(3), (b)), aggravated battery with a firearm (*id.* § 12-3.05(e)(1)), and unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)).

¶ 5      On December 20, 2023, the State filed a petition to deny defendant pretrial release, alleging that defendant was charged with detainable offenses and his release posed a real and present threat to community safety.

¶ 6      The hearing on the State's petition took place on December 20, 2023, and January 5, 2024. In sum, the State presented the grand jury transcript and proffered that, on August 18, 2022, defendant and Barbara Walker-Bew went to a Mobile gas station on Lake Street in Aurora. Defendant exited the passenger side of a vehicle and entered the gas station, while Walker-Bew remained in the car.    While Walker-Bew was in the vehicle, her ex-boyfriend, Jonathan Chatman, approached the vehicle, opened the passenger door, and leaned inside.    Walker-Bew exited the vehicle and appeared to have a conversation with Chatman.    Defendant exited the gas station and approached the passenger side of the vehicle where Chatman was located.    Defendant reached in the vehicle.    When Chatman stood up from leaning in the vehicle, defendant shot Chatman somewhere below the chest, and then defendant and Walker-Bew fled the scene.    Police

_____

Today (SAFE-T) Act.    Neither name is official, as neither appears in the Illinois Compiled Statutes or public acts.

ultimately pursued them and witnessed defendant discard the firearm and another object, which was later determined to be individual packets of crack cocaine.

¶ 7    Defendant presented evidence by proffer and exhibits that he claimed showed that he acted in self-defense, necessity, or defense of another.   In sum, defendant asserted that Chatman was the initial aggressor, as he waited to approach Walker-Bew until after defendant had stepped away. When defendant exited the gas station, he argued, his interpretation of the situation was influenced by Chatman's documented history of violence, including prior violence he had perpetrated against Walker-Bew, as well as a history of attempted vehicular carjacking.   Defendant provided the court with police reports and other exhibits documenting Chatman's criminal history, including when Chatman inflicted violence against Walker-Bew.   In addition, defendant presented a surveillance video from the gas station the day of the event and a video interview of Walker-Bew that he argued demonstrated that he acted out of self-defense or defense of another.   As such, defendant argued that the State did not meet its burden to show by clear and convincing evidence that he committed any crime ("it is not a crime if it is self-defense"), the evidence reflected that the situation was a unique one and did not render him a danger to Chatman or the community when, in fact, the video shows that Chatman was the one who approached defendant and Walker-Bew and there was no evidence that the gun belonged to defendant, and that GPS or electronic home monitoring (EHM) and "other things" could mitigate any risk, since "this is a very specific narrow situation.   This isn't random acts *** occurring in the community."   Defendant also noted that (1) he had a five-year-old son, (2) would, if released, live in Chicago with his brother and sister, (3) Chatman lives in Aurora, and (4) Walker-Bew lives out of state.   In sum, defendant argued that he was "going about his day with his girlfriend at a gas station when this individual

was basically stalking to have stopped his car, laying in wait for the woman to be alone when [defendant] came out and encountered this situation which we know to be a dangerous situation."

¶ 8     The State replied that defendant had drugs and a gun on him and shot Chatman.    It argued there was no self-defense, as evidenced by defendant's flight from the gas station, instead of waiting for the police to explain he had to shoot in self-defense.    Moreover, the State argued, defendant did not merely flee; he did not stop when chased by police.    Also, he ran from the vehicle and threw the gun and drugs.    Further, the State noted that, critically, Walker-Bew had stated that she was outside the car when defendant approached, asked if she was okay, and she said *yes*; she did not say she was in fear or needed help.    The video reflected that Chatman turned around, and defendant immediately shot him.    As such, the State argued that defendant was a threat to Chatman and the community, where he was traveling with a gun and drugs and had "no compunctions about shooting an unarmed man in a gas station around numerous people."    Given that defendant was willing to shoot someone around 4 p.m. in public, the State argued it had proved that he was a danger and no set of restrictions could protect Chatman or the public.

¶ 9     Defendant noted, in part, that one of the videos demonstrated that, after the shooting, a random person, who was not a police officer, started shooting at defendant and that defendant then sped off.    As such, there was no evidence that defendant fled the gas station from the police. Also, defendant argued there was no evidence that the gun was defendant's, as opposed to Chatman's, and, indeed, Chatman has been known to carry a gun with him, which, according to a police report, he had previously held to Walker-Bew's face while attempting to rape her.

¶ 10    On January 5, 2024, the court granted the State's petition.    In its oral and written findings, the court noted that, at this particular stage of the proceedings, the State met its burden of establishing by clear and convincing evidence that the proof was evident and presumption great

that defendant committed the charged offenses. It based its finding on the video and other information presented through the grand jury testimony. Further, it noted that, because the shooting of Chatman was captured on video, there is no question that defendant shot him.

¶ 11    As to dangerousness, the court found defendant posed a real threat to Chatman and the community. It stated that, while this violence was not completely random, it was violence that arose quickly,

> "And there's a lot of arguments here on whether there's provocation or not. I *don't* find that raises the level at this particular stage to determine that he's *not* a threat to the alleged victim and a real threat to the community—the safety of the community based on the quickness of that gunshot in this particular matter." (Emphases added.)

Further, the court noted, the evidence presented to the court "at this stage" showed that defendant, for reasons not explained, drew a weapon and fired with an intent to kill.

¶ 12    Finally, the court found that no conditions of release could mitigate the risk of danger. Although the court acknowledged that EHM and other methods of keeping defendant home exist, it could not find those methods "would completely mitigate the threat" from the violence shown by the evidence at this point. Further, in its written findings regarding why less-restrictive conditions would not assure community safety, the court noted that, in light of the evidence presented, nothing other than detention would "ensure the community to be safe" because defendant, if not incarcerated, "could obtain weapons and commit crime."

¶ 13    On January 9, 2024, defendant filed a notice of appeal, using the form notice promulgated under Illinois Supreme Court Rule 606(d) (eff. Oct. 19, 2023). On March 11, 2024, defendant submitted a Rule 604(h) memorandum. Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023). On April 8, 2024, the State submitted its memorandum opposing defendant's appeal.

¶ 14                                      II. ANALYSIS

¶ 15     Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code), as amended by the Act.   725 ILCS 5/110 (West 2022).   Under the Code, as amended, all persons charged with an offense are eligible for pretrial release, and a defendant's pretrial release may only be denied in certain statutorily limited situations.   *Id.* §§ 110-2(a), 110-6.1(e). As relevant here, upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a detainable offense (*id.* § 110-6.1(e)(1)), that the defendant's pretrial release poses a real and present threat to the safety of any person or the community (*id.* §§ 110-6.1(a)(1)-(7), (e)(2)), and that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community (*id.* § 110-6.1(e)(3)).   "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74.   Clear and convincing evidence is "more than a preponderance of the evidence and not quite approaching the beyond-a-reasonable-doubt standard necessary to convict a person of a criminal offense."   *People v. Craig*, 403 Ill. App. 3d 762, 768 (2010).

¶ 16     We review defendant's arguments under a bifurcated standard of review: the court's factual determinations are reviewed to determine whether they are against the manifest weight of the evidence, and the court's ultimate determination regarding denial of pretrial release is reviewed for an abuse of discretion.   *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13.   An abuse of discretion occurs when the court's decision is unreasonable.   *Id.*   Likewise, a decision is against the manifest weight of the evidence where the court's determination is unreasonable.   *Id*.

¶ 17    In his notice of appeal, defendant raised four issues.    First, he asserted that the State failed to meet its burden of proving that the proof is evident or the presumption great that he committed the charged offenses, because the grand jury transcripts were insufficient to satisfy the burden, it offered no evidence to show that defendant's actions were not in self-defense, necessity, or defense of another, and it offered no evidence to show that the gun belonged to defendant.    Second, defendant asserted that the State did not meet its burden to show that he poses a real and present threat to the safety of another or the community because, he contended, this was a matter of self-defense, necessity, and/or defense of another, there was no evidence to support that he was a threat to the community or Chatman, and any argument that he is a threat to Chatman was mitigated by the fact that Walker-Bew now lives out of state and defendant and Chatman live in "completely different cities."    Third, defendant argued that the State did not meet its burden to prove that no conditions could mitigate the real and present threat to safety, because there were other mitigating conditions that were not fully considered, and EHM would have addressed any possible safety concern.    Finally, defendant argued that the court erred in determining that no conditions would reasonably ensure defendant's appearance for later hearings or prevent him from being charged with a subsequent felony or Class A misdemeanor, because, again, there were other mitigating conditions that were not fully considered, and EHM would have addressed any possible safety concern.    Notably, however, defendant raised none of these issues in his memorandum.    As such, the foregoing issues raised only in the notice of appeal are abandoned.    See *People v. Rollins*, 2024 IL App (2d) 230372, ¶ 22 (finding defendant abandoned those Rule 604(h) claims raised in the notice of appeal but not addressed in the memorandum).

¶ 18    Turning to the memorandum, defendant raises three issues.    First, he argues that the court improperly shifted the burden of proof to him to prove that he is not dangerous.    Second,

defendant argues that the court did not make any specific findings addressing conditions short of detention. Finally, defendant argues that the court misapplied the law as to conditions, where it stated that certain conditions less than detention would not "completely mitigate" the risk of danger. Defendant concedes, however, that these issues would normally be forfeited, as they were not raised in his notice of appeal and are being raised now for the first time; thus, he requests that we review the issues for plain error, noting the evidence with respect to dangerousness and conditions was close.

¶ 19    When a defendant has failed to preserve an error for appeal, a reviewing court may review the issue for plain error. *People v. Bush*, 2023 IL 128747, ¶ 71; Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1970). Plain-error review is appropriate when a clear or obvious error occurs and (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error" or (2) the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Bush*, 2023 IL 128747, ¶ 71. Under either prong of the plain-error doctrine, the first step is to determine whether a clear or obvious error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). "Plain-error review is reserved for errors that are clear or obvious based on law that 'is well settled at the time of trial[.]' " *People v. Williams*, 2015 IL App (2d) 130585, ¶ 11 (quoting *People v. Downs*, 2014 IL App (2d) 121156, ¶ 20). Moreover, the burden of persuasion in a plain-error analysis rests with the defendant. *People v. Wilmington*, 2013 IL 112938, ¶ 43.

¶ 20    Here, none of defendant's arguments reflects clear or obvious error. Defendant argues first that the court shifted the burden of proof, detaining him because it could not find that he is *not* a threat, whereas it was the State's burden to prove that he *was* a threat. The double-negative,

defendant argues, inverted the burden, improperly shifting it to him to prove that he was not a threat.   In support, he cites *People v. Carter*, 2021 IL 125954, and *Billman v. Easton Area School District*, 620 F. Supp. 3d 215 (E.D. Penn. 2022).   Respectfully, we do not find those cases applicable here, namely because we simply disagree that the court shifted the burden or misapplied law.   Specifically, the comments that defendant challenges were made when the court was considering dangerousness.   As defendant concedes, the court first stated that it found that defendant posed a real and present threat to Chatman and the community.   It *then* made comments reflecting it had also considered defendant's position that he was not dangerous because this act was not random but, rather, it occurred in a unique situation.   The court partially agreed with defendant, where it noted that, it could not "say that this is completely random violence." However, it then disagreed that that fact rendered defendant not dangerous, because it was "violence that arose quickly."   Further, the court's comments reflect it had considered defendant's arguments that he was not dangerous because Chatman was the aggressor. Specifically, it noted,

> "And there's a lot of arguments here on whether there's provocation or not.   I don't find that raises the level at this particular stage to determine that he's not a threat to the alleged victim and a real threat to the community—the safety of the community based on the quickness of that gunshot in this particular matter."

Thus, in context, the court's comments reflect its finding that defendant's case did not undercut the State's showing of dangerousness.   Further, in writing, the court noted that the evidence presented showed dangerousness because defendant drew a weapon and fired with an intent to kill. Collectively, therefore, the record reflects that the court properly considered whether the State had

proved by clear and convincing evidence that defendant was a danger, as opposed to *requiring* defendant to prove that he was not. In short, the court did not clearly misapply the law.

¶ 21 Similarly, defendant argues that the court did not make any specific findings addressing conditions short of detention, instead only offering brief, generalized references to the violence reflected by the evidence at this point. Although defendant is correct that section 110-6.1(h)(1) of the Code, as amended, requires the court to make a written finding summarizing its reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case (725 ILCS 5/110-6.1(h)(1) (West 2022)), there is again no clear or obvious error here. The court here did enter a written order with its findings, and the court's written and oral findings may be read together. See, *e.g.*, *People v. McNamera*, 2024 IL App (2d) 240026-U, ¶ 30. The court's findings reflect its acknowledgement that EHM and other methods of keeping defendant home exist, but that they would not mitigate the threat of violence that defendant exhibited in this case because defendant, if not incarcerated, could obtain weapons and commit a similar act of violence. In fact, defendant does not acknowledge this portion of the court's written findings. In sum, the court did not clearly misapply the law by failing to make requisite findings.

¶ 22 Finally, defendant argues that the court misapplied the law as to conditions, where it found that certain conditions less than detention would not "completely mitigate" the risk of danger. In contrast, to order detention, the Code requires only that the court find that no conditions can mitigate any real and present threat. 725 ILCS 5/110-6.1(e) (West 2022). While it is true that there is no requirement that risk be "completely" mitigated, we again do not, in context, read the court's findings as improperly requiring an absolute elimination of risk. Rather, in its oral ruling,

the comment was made while reflecting on the nature of the crime and whether EHM or similar conditions could mitigate the *type* of threat demonstrated here. And, in its written ruling, the court did not repeat the "complete" mitigation reference. Instead, the court, in answering the typewritten prompt to explain why less-restrictive conditions would not "assure" safety, wrote that conditions could not "ensure" safety because defendant could still access a weapon and commit crime. Thus, the court did not clearly misapply law.

¶ 23 In sum, defendant has not satisfied his burden to establish clear or obvious error on the issues raised and, thus, his plain-error claims fail. The trial court's decision to grant the State's petition is, therefore, affirmed.

¶ 24                        III. CONCLUSION

¶ 25 For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

¶ 26 Affirmed.